**MARTINEZ et al. v. GUTIERREZ et al.**
No. 1394—6009.

Commission of Appeals of Texas, Section B.
Dec. 30, 1933.

Mann, Neel & Mann, of Laredo, for plaintiffs in error.

W. W. Winslow and Gibson & Blackshear, all of Laredo, for defendants in error.

SMEDLEY, Judge.

Defendants in error sued to establish their ownership of an undivided one-fourth interest in a tract of land situated in Zapata county, Tex., containing 5,280.7 acres, known as the Blas Maria grant, which was originally titled by Spain to Antonio Martinez Gutierrez, and for partition. After alleging in general terms their ownership of such undivided interest, defendants in error particularly alleged that they acquired the interest claimed by them as the children and sole heirs of one Jose Encarnacion Gutierrez, who acquired his interest as the adopted child and sole heir of Gregoria Martinez, the daughter of Antonio Martinez Gutierrez, the original grantee. The petition alleges that said Jose was adopted as the child of Gregoria Martinez and her husband in the city of Guerrero, state of Tamaulipas, Mexico, in the year 1851, in accordance with the laws with reference to adoption then in force in said state.

The trial court sustained a general demurrer to the petition and dismissed the suit;

The Court of Civil Appeals held that the petition was not subject to general demurrer, and reversed and remanded the cause.

The important question in the case is whether or not one adopted in conformity with the laws in effect in Mexico in the year 1851 may inherit from the adopting parent land in Texas under and in accordance with the Texas laws of descent, that is, in the same way and to the same extent that a child adopted in Texas inherits. It is the contention of plaintiffs in error that the courts of this state will not recognize such adoption in Mexico because the laws then in effect in Mexico, both with reference to the method of adoption and with reference to the rights of the adopted child to inherit, were fundamentally different from the laws and policies of Texas.

The only Texas case which appears to bear directly upon the question presented is McColpin v. McColpin's Estate (Tex. Civ. App.) 75 S. W. 824; Id. (Tex. Civ. App.) 77 S. W. 238. There the petitioner, Mrs. Cummins, sought in probate court to establish a right to inherit the property of C. A. McColpin, claiming that she had been legally adopted by him in the state of Kentucky in accordance with the laws of that state. In its first opinion the Court of Civil Appeals held that it was not necessary for it to decide whether or not the adoption in Kentucky would be effective in Texas and make Mrs. Cummins McColpin's heir, because the evidence did not show that Mrs. Cummins had been adopted by McColpin in the state of Kentucky and in conformity with the statute of that state. On rehearing, however, the Court of Civil Appeals decided this question, and remanded the case for trial of the issue whether the contract of adoption was or was not executed in the manner required by the Kentucky law. The court's decision of the question is thus stated by Judge Key: "While we have found no case in which the question has been decided in this state, the weight of authority seems to support the doctrine that the adoption of a child in one state, in accordance with the laws thereof, will entitle such child to inherit property left by the adopter in another state. 1 Am. & Eng. Ency. Law (2d Ed.) p. 733, and cases there cited. Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321, is the leading case on the subject, and holds that adoption, like marriage, fixes a status, and establishes the fact that the person adopted is, in law, as to the subject of inheritance, a child of the adopter. While there are authorities to the contrary, we accept that doctrine."

Application for writ of error to the Supreme Court was dismissed for want of jurisdiction.

The doctrine thus stated and accepted by Judge Key is the generally accepted doctrine, and is, as he says, supported by the great weight of authority, including a number of carefully considered later decisions.

Texas Jurisprudence cites the case of McColpin v. McColpin's Estate, as holding that the adoption of an heir in another state according to the laws of such state will entitle such heir to inherit property left by the adopter in this state. The reference to that decision is then followed by the following statement: "The true doctrine is announced to be, that adoption, like marriage, fixes a legal status and establishes the fact that the person adopted is, in law, an heir of the adopter." 1 Tex. Jur. p. 745.

Wharton on Conflict of Laws (3d Ed.) § 251a, after referring to some of the conflicting decisions, thus states the general rule: "There is, however, no doubt as to the general principle that the status acquired by adoption in a state or country having jurisdiction will be recognized both for the purpose of the descent of real, and the distribution of personal, property in other states or countries, at least in those whose laws provide for adoption." See, also, Minor's Conflict of Laws, § 101, p. 223; 1 C. J. pp. 1402, 1403; and see many authorities cited and discussed in extended note in 73 A. L. R. page 964 and following.

■ It is not believed that the right of the child adopted in a foreign jurisdiction to inherit land in Texas is affected by the fact that the method of adoption under the law of the foreign state may have been radically different from the method under the Texas statute. In Mexico, according to the allegations in the petition, adoption was accomplished through proceedings before a judge, while under the Texas statute enacted in 1850 the method of adoption was the execution by the adopting parent and filing for record of an instrument in the nature of a deed. Acts 3d Leg. c. 39, p. 36, 3 Gammel's Laws, p. 474. The particular form prescribed by law for adoption is of no real consequence. The method is left to the legislative department. It may make the ceremony simple, as it was under the original Texas statute, by requiring no more than the executing and recording of an instrument like a deed, or it may make it more formal by requiring a hearing before, and an order or decree by, a judge or a court. Generally, one of these two methods is prescribed. 1 R. C. L. p. 593. The decisions that have to do with the effect of the law of the state of the adoption upon the right of the adopted child to inherit land in another state concern themselves but little with differences in the method of adoption.

A more difficult question is raised by the contention of plaintiffs in error that the child adopted in Mexico was not entitled to inherit land in Texas because rights of inheritance given by the law of Mexico to children adopted there were radically different from, and more restricted than, the rights of inheritance

given to adopted children by the Texas statute.

■ This position is supported to an extent by such decisions as Shaver v. Nash, 181 Ark. 1112, 29 S.W.(2d) 298, 73 A. L. R. 961, and Sunderland's Estate, 60 Iowa, 732, 13 N. W. 655. Those decisions treat the law as to what the adopted child may or may not inherit as being a qualification of the capacity to inherit rather than as a part of the law of inheritance and a limitation or restriction of the right to inherit. Such decisions run counter to the ancient and well-settled doctrine that real estate, its ownership, conveyance, and descent, are exclusively subject to the laws of the state or nation in which it is situated. See 9 Texas Jurisprudence, p. 359; Story on Conflict of Laws (8th Ed.) §§ 424–463; Wharton on Conflict of Laws (3d Ed.) § 274 and following; Minor's Conflict of Laws, § 11.

Other, and it is believed better reasoned, decisions permit a child adopted in a foreign state to inherit land in accordance with the laws of the state where the land lies, although the adopted child may be given thereby greater rights of inheritance than were accorded by the law of the state of his adoption. See Anderson v. French, 77 N. H. 509, 93 A. 1042, L. R. A. 1916A, 660, Ann. Cas. 1916B, 89; In re Reimann's Estate, 124 Kan. 539, 262 P. 16.

The basis for the decisions last referred to is that they recognize as two separate and distinct things, first, the status created by adoption with its incidental capacity to inherit, which is controlled and determined by the law of the place of adoption, and, second, the right to inherit property which is fixed and measured as to realty by the law of the place where the land lies, and as to the personalty by the law of the domicile of the owner.

This principle is best expressed by Chief Justice Gray in the leading case of Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321, where he says:

"It is a general principle, that the status or condition of a person, the relation in which he stands to another person, and by which he is qualified or made capable to take certain rights in that other's property, is fixed by the law of the domicil; and that this status and capacity are to be recognized and upheld in every other State, so far as they are not inconsistent with its own laws and policy. Subject to this limitation, upon the death of any man, the status of those who claim succession or inheritance in his estate is to be ascertained by the law under which that status was acquired; his personal property is indeed to be distributed according to the law of his domicil at the time of his death, and his real estate descends according to the law of the place in which it is situated; but, in either case, it is according

to those provisions of that law which regulate the succession or the inheritance of persons having such a status. * * *

"And the validity of any transfer of real estate by act of the owner, whether inter vivos or by will, is to be determined, even as regards the capacity of the grantor or testator, by the law of the State in which the land is situated. Story Confl. §§ 431, 474. But the status or condition of any person, with the inherent capacity of succession or inheritance, is to be ascertained by the law of the domicil which creates the status, at least when the status is one which may exist under the laws of the State in which it is called in question, and when there is nothing in those laws to prohibit giving full effect to the status and capacity acquired in the State of the domicil.

"A person, for instance, who has the status of child of another person in the country of his domicil, has the same status here, and as such takes such share of the father's personal property as the law of the domicil gives him, and such share of his real estate here as a child takes by the laws of this Commonwealth, unless excluded by some positive rule of our law."

The rule stated in the foregoing quotation that the status or condition of a person, with the inherent right of succession or inheritance, is to be ascertained by the law of the domicile which creates the status, is universally recognized. It is thus stated in Texas Jurisprudence: "It is a general principle of law that the status or condition of a person and the relation in which he stands to other persons are fixed by the law of his domicile, and that the status so fixed is recognized and upheld in any other state, so far as is consistent with the laws and policy of the latter jurisdiction. This is the primary rule to be referred to where questions of personal status arise in cases dealing with legitimacy, majority or minority, adoption, insanity, marriage, divorce, coverture, and the rights and disabilities resulting therefrom." 9 Tex. Jur. p. 358. See, also, Wharton on Conflict of Laws (3d Ed.) § 20; Story on Conflict of Laws (8th Ed.) § 51, and following; Minor's Conflict of Laws, §§ 68–75.

■■ So also it is well settled by the authorities that by adoption a status is fixed similar to that arising from marriage, that questions affecting the existence of such status and the method of its creation are controlled by the law of the state or nation which creates it, and that the status so created by adoption will be recognized through comity in other states. See 1 C. J. p. 1402; 1 R. C. L. pp. 592, 618; Anderson v. French, 77 N. H. 509, 93 A. 1042, 1045, L. R. A. 1916A, 660, Ann. Cas. 1916B, 89; In re Reimann's Estate, 124 Kan. 539, 262 P. 16, 17; Finley v. Brown, 122 Tenn. 316, 123 S. W. 359, 25 L. R. A. (N. S.) 1285; Brewer v. Browning, 115 Miss. 358,

76 So. 267, 519, L. R. A. 1918F, 1185, Ann. Cas. 1915B, 1013.

In Anderson v. French, above, the court, in comparing the status fixed by adoption with that arising from marriage, said: "No logical reason has been advanced, and none occurs to us, why the rights of a married woman in her husband's personalty should be determined in accordance with the laws of his last domicile, and the rights of an adopted child in relation to personalty by the laws where the adoption occurred, regardless of the domicile of .the owner at the time of his death."

The Kansas court, in Re Riemann's Estate, above, expressed the opinion that "there is no such status as that of a partially adopted child any more than there is of a partially married ·spouse." It held that the adopted child could, in accordance with the laws of Kansas, inherit from the brother of the deceased adopting parent, although the law of Illinois, where the child was adopted, did not give such right of inheritance. Its conclusion in connection with such holding is thus stated: "We .favor the view that there is no such thing as a limited status of adoption, * * * and .that the law of inheritance is a mere incident which is without controlling significance outside the state of its enactment."

Adherence to the principles announced in the quotation above from Ross v. Ross and in the decisions last above discussed to the effect that the status arising from adoption is fixed by the law of the place of the adoption, and that the right, and the extent of the right, to inherit real property are fixed by the law of the place where the land lies, gives full effect to the two settled rules of private international law to ·which we have referred, and, it is believed, ·does no violence to any settled policy of this state.

■ Applying to the instant case some of the rules announced in Ross v. Ross, we find that the petition alleges an adoption in Mexico by compliance with certain formalities prescribed by its law, and that the child thereby became the legally adopted son of the adopting parent, with the capacity or qualification to inherit from her. Such status could exist under the laws of Texas, for its act of 1850 provided for adoption and made the adopted child the legal heir of the one so adopting him or her. The status and capacity arising from the adoption in Mexico, therefore, were not inconsistent with the law or policy of Texas. Furthermore, there appears to have been nothing in the laws of Texas prohibiting giving full effect to the status and capacity acquired in Mexico. With such status and capacity to inherit thus established and recognized, the right of such adopted child to inherit land in Texas and the measure of such right are determined by the law in Texas. The same principle is thus stated in Anderson· v. French, 77 N. H. 509, 93 A. 1042,

1043, L. R. A. 1916A, 660, Ann. Cas. .1916B,. 89: "The legality of the adoption is decided. by the law of the state where the adoption took place, but that relation or status having been established, what the adopted child shall. inherit should be determined in the case of personalty by the lex domicilii of the owner. at the time of his decease, and real estate by: the lex rei sitæ."

In commenting upon the decisions announcing this rule, the annotator in 73 A. L. R. page 974, says: "This view seems to be eminently sound, for the state of adoption, by its statute of adoption, cannot dictate to another state where the property is, the class of persons who shall inherit, or the extent to which they shall inherit, property there located; and the statute of the rei sitæ or domicilii decedentis will control, since the question is not whether the child is or is not an adopted child (which relates to the recognition of his status), but whether an adopted child shall, or the extent to which he shall, inherit (which is a question of descent and distribution)."

It may be thought that the peculiar phraseology of the Texas adoption statute of 1850 indicates a purpose to deny rights of inheritance to any one adopted otherwise than in accordance with the procedure outlined by that statute, as in its first section it authorizes adoption by the execution and filing for record of an instrument in the nature of a deed, and in its second section provides in substance that such instrument so executed· and recorded shall entitle the party so adopt-- ed to·the rights of a legal heir. It is our opinion, however, that the general purposes. of the entire statute should be given controlling effect in its interpretation and construction in preference to a technical adherence to its phrases. Those general purposes are, first, to provide a method for adoption, and,: second, to give to one adopted the rights of a legal heir. A similar contention was made in Ross v. Ross, 129 Mass. 243, 37 Am. Rep.' 321, and it was thus answered in the opinion: "It is argued that the words 'so adopted' imply that children otherwise adopted are incapable of inheriting lands in this Commonwealth. But it appears to us that these words, in the connection in which they stand, warrant no such implication; and that the Legislature, throughout these statutes, had solely in view adoption by or of inhabitants of this Commonwealth, and did not intend either to regulate the manner, or to define the effects, of adoption by and of inhabitants of other States according to the law of their domicil."

■ We conclude, therefore, that, notwithstanding the differences between the law of Mexico and the law of Texas as to the method of adoption, and although under the law of Mexico the right of an adopted child to inherit may have been different from and

more restricted than the right of inheritance given to an adopted child by the Texas law, the status of the child adopted in Mexico, with its qualification or capacity to inherit, should be respected and recognized by the Texas courts, and the child accorded the right to inherit land in Texas in accordance with the laws of this state, provided the adoption was in fact authorized by, and accomplished in compliance with, the laws of Mexico.

It becomes necessary to determine the sufficiency of the petition of defendants in error tested by general demurrer. As stated, they first allege in general terms their ownership of an undivided interest in the land described, that the remaining undivided interest is owned by plaintiffs in error, and that the land is of the estimated value of $50,000. Such general allegations, if not followed by more particular allegations of title, were probably sufficient. R. C. S. 1925, art. 6083. The petition goes further, however, and alleges the facts constituting the title claimed. The question to be determined, therefore, is whether the facts particularly averred constitute sufficient allegations of title. Snyder v. Nunn, 66 Tex. 255, 18 S. W. 340; McDonald v. Bank, 74 Tex. 539, 12 S. W. 235; Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568.

After alleging the grant, and that Gregoria Martinez, through whom they claim, was one of the children and heirs of the original grantee, defendants in error in their petition set out the facts constituting the title claimed by them as follows:

"8. That Gregoria Martinez was never married to any person other than the said Benigno Gutierrez and that no children were born to the said Gregoria Martinez of said marriage.

"9. That Jose Encarnacion Trevino (later known as Jose Encarnacion Gutierrez) was the legitimate child of Juan Trevino and his wife, Magdalena Ramirez, both of Guerrero, Mexico, and was born on or about the 23rd day of March, 1851.

"10. That on or about the 7th day of April, 1851, (plaintiffs not being able to allege the exact day with precision for the reason that the record of the judicial act hereinafter alleged has been lost or destroyed) the said Gregoria Martinez and Benigno Gutierrez, each acting with the consent and approval of the other, together with the said Juan Trevino and Magdalena Ramirez and the said Jose Encarnacion Trevino, appeared before a judge in the city of Guerrero aforesaid, and in the said Juan Trevino and Magdalena Ramirez stated that they desired to give their child Jose Encarnacion in adoption to the said Gregoria Martinez and Benigno Gutierrez and the said Gregoria Martinez and Benigno Gutierrez stated that they would receive said child in adoption and the said child, Jose Encarnacion, consenting by remaining silent

and not contradicting and said judge then determined that the said Gregoria Martinez and Benigno Gutierrez had the qualities and circumstances necessary to adoption and that the adoption would be advantageous and useful to the said child Jose Encarnacion, and authorized the adoption of said child as sought; and the said Juan Trevino and his wife Magdalena Ramirez, then took the child Jose Encarnacion by the hand and delivered it to the said Gregoria Martinez and Benigno Gutierrez who received the child as their adopted child and the public scribe, by order of the judge, issued in proper form a public document certifying to the act of adoption; that the public document so issued by the public scribe has been lost or destroyed and plaintiffs now give notice to the defendants to produce it upon the trial of this cause or secondary evidence thereof will be offered by plaintiffs.

"11. That the law in force in the State of Tamaulipas, Mexico, in 1851, was the law of Spain, (which up to the year 1846 was in force as well in the territory now embracing Webb and Zapata Counties as the territory of the present Republic of Mexico) and provided with reference to adoption that it might be done in manner following, to-wit:

"There should appear before the judge the person who is going to adopt, the person who is to be adopted and his legitimate parent;

"The parent stating that he wants to give the child in adoption, the adopting person stating that he will receive the child, and the child consenting thereto; it being sufficient if the child remains silent and does not contradict; the judge will determine if the adopting party has the qualities and circumstances necessary to adopt, and the adoption be useful to the party to be adopted, in which case he will authorize the adoption. The parent will then take the child by the hand and deliver the child to the adopting party who will receive the child as an adopted child, and the public scribe will issue in proper form a public document by order of the judge for the constancy of the act. And the law in force in said jurisdiction on the 9th day of July, 1871, being the same law as hereinbefore alleged, required that minors desiring to marry should have and exhibit to the judge, the consent of their parents.

"12. That by virtue of said law and of the proceedings had as in paragraph 6 hereof alleged the said Jose Encarnacion Trevino became the legally adopted son of the said Gregoria Martinez and Benigno Gutierrez and then acquired the name and thereafter throughout all his life was known as José Encarnacion Gutierrez and, there being no children born to the said Gregoria Martinez, upon her death he became her sole and only heir at law and inherited all her interest in said Blas Maria Grant.

"13. That plaintiffs are the only children and sole heirs at law of the said Jose Encarnacion Gutierrez who died on or about the —— day of —— and inherited all the part and share in said Blas Maria Grant acquired by him from his said mother, Gregoria Martinez."

Thus the title alleged is deraigned through the adoption of Jose Encarnacion Gutierrez by Gregoria Martinez in Guerrero, in the state of Tamaulipas, Mexico, in the year 1851. The allegations as to the terms and provisions of the law under which the adoption was accomplished are, briefly stated, that the law in effect was the law of Spain, and provided that adoption might be had by the appearance before the judge of the person who desired to adopt the child, together with the child and the child's parent, the statement by the child's parent of his consent to the adoption, and the statement by the adopting parent of his desire to adopt the child, with the consent or the silence of the child, the determination by the judge whether the adopting parent had the qualities and circumstances necessary to adopt, and that the adoption would be useful to the child, the authorizing of the adoption by the judge, and the issuance on the order of the judge of a public document to evidence the act. The petition then alleges compliance with these formalities.

Plaintiffs in error take the position that the courts of this state judicially know what the law was in Mexico with reference to adoption prior to Texas independence, and, further, that it is presumed that such law continued to be the same until after the time of the adoption, and that such facts as to what the law was, so judicially known and so presumed, may be considered in determining the sufficiency of the petition. They assert that the law was that a woman could not adopt a child unless she had lost a son in battle, and then only with the consent of the Mexican federal government.

It is held that, in passing upon the sufficiency of a petition challenged by general demurrer, courts may take into consideration, in addition to the facts averred, other facts of which they take judicial notice. Anderson v. Polk, 117 Tex. 73, 297 S. W. 219; State v. Bradford, 121 Tex. 515, 50 S.W.(2d) 1065. And, while the laws of a foreign nation are ordinarily treated as facts to be pleaded and proven, there are authorities holding that the courts of this state will take judicial notice of the laws of Mexico prior to Texas independence. This because, Texas having been a part of that nation, its laws as existing at that time were laws, not of a foreign state, but of an antecedent government. Zarate v. Villareal (Tex. Civ. App.) 155 S. W. 328 (application for writ of error refused); State v. Sais, 47 Tex. 307; Watrous v. McGrew, 16 Tex. 506; United States v. Perot, 98 U. S. 428, 25 L. Ed. 251; Fremont v. United States, 17 How.

542, 15 L. Ed. 241; Crespin v. United States, 168 U. S. 208, 18 S. Ct. 53, 42 L. Ed. 438.

It is also true that a law or a condition once proven or known to exist will be presumed, in the absence of evidence to the contrary, to have continued in effect. Zarate v. Villareal (Tex. Civ. App.) 155 S. W. 328 (application for writ of error refused); Panama Ry. Co. v. Toppin, 252 U. S. 308, 40 S. Ct. 319, 64 L. Ed. 582.

Such presumption, however is but a presumption of fact, and it can be indulged and given effect only in the absence of facts. As stated in Texas Jurisprudence: "The presumption of the continued existence of an established condition or fact is merely an inference of fact, and therefore may be rebutted. It only obtains in the absence of proof to the contrary." 17 Tex. Jur. p. 257.

In Geffert v. Yorktown Independent School District (Tex. Com. App.) 290 S. W. 1083, 1086, it is said that: "A presumption is never indulged contrary to the known fact. It only supplies an inference where the fact is not otherwise shown." See, also, Moore v. Wooten (Tex. Com. App.) 280 S. W. 742; Wigmore on Evidence (2d Ed.) § 2491, vol. 4, pp. 3533–3535; Jones' Commentaries on Evidence (1913 Ed.) § 10f; 17 Texas Jurisprudence, p. 252.

The petition of defendants in error undertakes to allege what the law with reference to adoption in fact was in the state of Tamaulipas in the year 1851, the substance of the allegations being that the law was that any one might adopt a child by compliance with certain formalities which are set out in the petition. The demurrer admits, for the purpose of testing the sufficiency of the petition, the facts so alleged, and the facts so admitted cannot be qualified or changed by a presumption which can exist only in the absence of facts.

Possibly it may be true that under the law in effect in Tamaulipas in 1851 a woman was not permitted to adopt a child unless she had lost a son in battle, and that for such adoption the consent of the Mexican federal government was essential, but Mexico in 1851 was a foreign nation, and of its laws then in effect the Texas courts do not take judicial notice. Such laws must be established by pleading and proof as other facts. Armendiaz v. De La Serna, 40 Tex. 291; Garza v. Klepper (Tex. Civ. App.) 15 S.W.(2d) 194 (application for writ of error refused); Abeel v. Weil, 115 Tex. 490, 283 S. W. 769; 17 Texas Jurisprudence, p. 175; 10 R. C. L. pp. 891, 892; Wigmore on Evidence (2d Ed.) § 2573, vol. 4, p. 3608.

For three reasons, therefore, the trial court, in passing upon the demurrer, could not determine, nor can this court determine, the correctness or the incorrectness of the contention of plaintiffs in error that under the

law in effect in Tamaulipas in 1851 a married woman could not adopt a child unless she had lost a son in battle, and then only with the consent of the Mexican government: First, because there are no allegations in the petition that such was the law; second, because the courts of this state cannot take judicial notice of what the law was in Tamaulipas in 1851; and, third, because the allegations of fact in the petition as to what the law was in 1851 cannot be changed or qualified by a presumption that the law continued to be what it was prior to Texas independence.

■ We find no authority to sustain the further contention of plaintiffs in error that Texas courts judicially know that no change was made in the laws of Mexico between the time when Texas won its independence and the year 1859. The particular subject of inquiry here is, What was the law with reference to adoption in the state of Tamaulipas in the year 1851? Such changes as may or may not have been made in the law of adoption during the period between Texas independence and 1851 are, in our opinion, not matters of such common knowledge or of such historical importance that the courts of Texas may take judicial notice of them. It is safer to adhere to the above rule that laws of foreign nations must be established by pleading and proof.

Plaintiffs in error submit a proposition to the effect that the allegation in the petition that the law of Spain was in force in Mexico in 1851 amounts to an admission on the part of the pleader that the same law was in effect in Mexico at the time of the adoption that was in effect there when Texas was a part of Mexico. The reference, however, to the law of Spain is but generally descriptive, and is followed by the particular allegations as to the law on the subject of adoption at the time in question, and it is such particular allegations that in our opinion constitute the averments of fact as to what the law was.

■ We are of the opinion that the allegations in the petition are not sufficient to warrant the conclusion of the Court of Civil Appeals that the proceedings for adoption amounted to a judicial adoption or a judgment in rem conclusive against the world as to the qualifications of Gregoria Martinez to adopt a child. The allegations are that the interested parties appeared before a judge and stated the desire of the adopting parents to adopt the child and the consent of the natural parents thereto, that the judge determined that the adopting parents "had the qualifications and circumstances necessary to adoption," and that the adoption would be advantageous to the child, and authorized the same, and that the public scribe by order of the judge issued a public document certifying to the act of adoption. The hearing so had and the findings so made hardly rise to the dignity of a trial and judgment. More-

over, there are no allegations as to what effect was given at that time in Mexico to such proceedings, that is, whether they were there given the effect of a judicial adoption and were regarded as conclusive of the question whether the adopting parent was one of those who were permitted by law to adopt. Since, as has been held, recognition of the status created by adoption in Mexico rests upon principles of comity, such adoption so accomplished should be given here no greater effect, and no less, as far as its conclusiveness is concerned, than was given it in Mexico.

■ However, the acts of the judge in connection with the adoption as alleged in the petition were official acts, and, in the absence of pleading and proof as to what effect was given to them in Mexico at that time, it will be presumed that they were rightly and duly performed. If, therefore, upon another trial, the pleadings of defendants in error, as to the proceedings required by law for adoption in Mexico at the time in question and as to compliance with such proceedings, are substantially the same as those contained in the present petition, and if such pleadings are supported by proper proof, a prima facie presumption will arise from the action of the judge in determining that Gregoria Martinez had the qualities necessary to adopt, and in authorizing the adoption, and from the public document, issued on the order of the judge, certifying to the act of adoption, that Gregoria Martinez was duly qualified under the law to adopt a child. Such presumption so arising will be inclusive of the facts that she had lost a son in battle and that she had obtained consent of the Mexican federal government to the adoption, in the event the existence of such facts is shown to have been essential to adoption by a woman under the law then in effect in Mexico.

■ Plaintiffs in error in two separate assignments assert the insufficiency of the petition, first, because it fails to allege that Gregoria Martinez died intestate, and, second, because there is no allegation that she was a resident of Mexico at the time of the adoption. These assignments are overruled under rule 17 for district and county courts that in passing upon a general demurrer every reasonable intendment arising upon the pleading excepted to will be indulged in favor of its sufficiency. This rule has often been construed and applied as authorizing the court to sustain a petition as good when essential facts may fairly be inferred from the facts alleged. Humphreys Oil Company v. Liles (Tex. Com. App.) 277 S. W. 100; American Produce Co. v. Gonzales (Tex. Com. App.) 1 S.W.(2d) 602; Southwestern Portland Cement Co. v. Latta & Happer (Tex. Civ. App.) 193 S. W. 1115 (application for writ of error refused); Turner v. Turner (Tex. Civ. App.) 195 S. W. 326.

On account of the same rule, a petition con-

taining allegations in the nature of conclusions, although condemned as bad pleading, has been sustained when tested by general demurrer. Hovencamp v. Union Stock Yards Co., 107 Tex. 421, 180 S. W. 225.

The petition alleges that no children were born to Gregoria Martinez, and that upon her death the adopted child became her sole and only heir at law and inherited all her interest in the Blas Maria grant. From these allegations and under a liberal rule of construction it may fairly be inferred that Gregoria Martinez died intestate. The adopted child could not have inherited her interest in the land if she had left a will disposing of it.

As to the matter of residence in Mexico at the time of the adoption, the petition contains allegations that Gregoria Martinez married in the city of Guerrero, state of Tamaulipas, Mexico, and died in the same city; that the adopted child was the legitimate child of Juan Trevino and his wife, Magdalena Ramirez, both of Guerrero, Mexico, and was born on or about March 23, 1851; and that on or about April 7, 1851, Gregoria Martinez and her husband and the parents of the adopted child appeared before a judge in the city of Guerrero, where the child was adopted. These allegations fairly indicate that all of the parties resided in Guerrero.

While the record does not show upon what ground the trial court sustained the general demurrer, it is suggested in the briefs that it was because the court concluded that the law of Mexico did not authorize adoption by a woman in the manner alleged in the petition. In all probability the attention of attorneys for defendants in error was not called to the questions as to the sufficiency of the petition as raised by these two assignments at the time they declined to amend. These considerations serve also to justify a liberal construction of the petition in favor of its sufficiency. See Wynne v. State National Bank, 82 Tex. 378, 17 S. W. 918.

It is unnecessary to discuss other assignments of error because they are disposed of by the rulings which have been made.

We recommend that the judgment of the Court of Civil Appeals reversing and remanding the cause be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is affirmed, and cause remanded for trial in accordance with the opinion of the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.