NORTHWESTERN NATIONAL CASU-
ALTY CO., Ming Yu Pannell and
Kim Pannell, Appellants,

v.

Russell DOUCETTE, Appellee.

No. 2–90–177–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 15, 1991.

Rehearing Overruled Nov. 20, 1991.

Calvin C. Fenton, Sullivan & Ave, Dallas, Tex., David C. Bakutis, Joel T. Sawyer, Cantey & Hanger, Fort Worth, for appellants.

Mack Ed Swindle, Thomas F. Harkins, Jr., Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, for appellee.

Before WEAVER, C.J., and LATTIMORE and DAY, JJ.

## OPINION

WEAVER, Chief Justice.

The primary issue in this case is whether a decedent's natural son, who was subsequently adopted by his stepfather in Arizona during the decedent's lifetime, is an heir of the decedent under Texas law. The trial court answered that question in the affirmative and held that the son was an heir of the decedent. We agree.

Johnny Edward Pannell ("decedent") died intestate in Middletown, Ohio, on November 12, 1984. At the time of his death, he was domiciled in and had his fixed place of residence in Tarrant County, Texas, and he owned real and personal property in Texas. His estate was administered in Texas.

On April 8, 1985, appellants, Ming Yu Pannell ("Ming Yu"), decedent's surviving wife, and Kim Pannell ("Kim"), the daughter of the decedent, filed a joint application for declaration of heirship and for issuance of letters of administration. That application alleged that the decedent was married only one time, that being to Ming Yu.

Also, the application stated that the decedent was never divorced, that Kim was the only child born to the decedent, and that the decedent was not survived by any ascendents or collateral kin. Sworn proof in support of such application, and verification of the facts set forth in the application, was filed on May 28, 1985. On the same date, Kim filed her disclaimer of inheritance, disclaiming her inheritance from the decedent.

On June 11, 1985, the Probate Court Number 1 of Tarrant County, Texas, signed an order appointing Ming Yu as independent administratrix of the decedent's estate and granted letters of administration. The trial court, by such order, found that all statements and allegations contained in the application filed by Ming Yu and Kim were true. The administratrix's bond, in the amount of $100,000.00, was issued by appellant, Northwestern National Casualty Company ("NNCC"), on June 11, 1985.

On November 10, 1987, while the administration of the decedent's estate was pending, appellee, Russell Doucette ("Doucette"), filed his declaration of heirship seeking partition of the decedent's estate. He claimed that he was a natural son and heir of the decedent, and that he was the owner of one-half of the decedent's estate as a result of the disclaimer filed by Kim. The record shows that appellee, Russell Doucette, was born Russell B. Pannell; that he was born to the decedent and his then wife, Mildred Bentle Pannell, ("Mildred"), on April 24, 1945; that the decedent and Mildred were divorced on February 20, 1954; that Mildred married Richard E. Doucette on June 25, 1954; and that on October 9, 1959, Russell E. Pannell was adopted by Richard E. Doucette and Mildred L. Doucette, and his name was changed to Russell B. Doucette by an order of adoption entered in the Superior Court of Maricopa, Arizona.

Doucette prevailed on his claims in the probate court, the determination of which involved three separate trials. In the first trial on the merits, the trial court removed Ming Yu as administratrix of the estate

because of her fraud upon the court, found Doucette to be an heir-at-law of the decedent, and appointed him as successor administrator. The trial court further determined that probate proceedings involving Texas property were to be governed by TEX.PROB.CODE ANN. § 40 (Vernon 1980). Thus, Doucette was not divested of his heirship by his subsequent adoption under the laws of Arizona.

A second trial was held regarding the award to Doucette of damages, prejudgment interest, and post-judgment interest. The trial court ordered one-half of the property of the decedent's estate to be vested in Doucette as of November 12, 1984. Additionally, Doucette was awarded damages in the amount of $250,000.00 from Ming Yu, with $100,000.00 of such damages to be recovered from the bonding company, NNCC, plus prejudgment interest at six percent per annum and post-judgment interest at ten percent per annum.

The third trial considered the effectiveness of Kim's disclaimer of inheritance. The trial court found Kim's disclaimer valid and binding, and found her post-trial revocation of disclaimer affidavit invalid. This appeal followed.

NNCC brings two points of error: 1) the trial court erred in holding that Doucette is an heir-at-law of the decedent; and 2) the trial court erred by awarding Doucette prejudgment interest over and above the penal sum of its bond. Ming Yu and Kim consented to common representation and raise three points of error. They claim the trial court erred: 1) in applying Texas law rather than Arizona law in determining Doucette's heirship right; 2) in failing to strike admissions by Ming Yu which were deemed admitted by operation of law due to her failure to respond to Doucette's request for admissions; and 3) in failing to declare Kim's disclaimer of inheritance invalid and revocable. Doucette argues for affirmance except for two cross points: 1) the trial court applied the wrong date and rate as to prejudgment interest on NNCC's bond; and 2) the trial court erred in not awarding Doucette his attorney's fees against NNCC.

We first address the question of whether the trial court erred in applying Texas law rather than Arizona law in determining Doucette's heirship right as raised by both NNCC's and the Pannells' point of error number one. The primary legal question on this appeal is whether Doucette's adoption in Arizona cuts off his Texas' right of inheritance. We hold it does not.

The pertinent provisions of the Arizona law on which the appellants' rely, and of which the trial court took judicial notice, read as follows:

§ 8–117. Rights under adoption order

. . . .

B. Upon entry of the decree of adoption, the relationship of parent and child between the adopted person and the persons who were his parents just prior to the decree of adoption shall be completely severed and all the legal rights, privileges, duties, obligations and other legal consequences of the relationship shall cease to exist, including the right of inheritance, except that where the adoption is by the spouse of the child's parent, the relationship of the child to such parent shall remain unchanged by the decree of adoption.

§ 14–2109. Meaning of child and related terms

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through or from a person:

1. An adopted person is the child of an adopting parent and not of the natural parents except that adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and that natural parent.

ARIZ.REV.STAT.ANN. § 8–117(B) (1970) and § 14–2109 (1973).

Doucette relies on TEX.PROB.CODE ANN. § 40 (Vernon 1980), which sets out in pertinent part that an adopted "child shall inherit from and through its natural parent or parents."

We agree with Doucette's claim that *Martinez v. Gutierrez,* 66 S.W.2d 678 (Tex.

Comm.App.1933, holding approved), resolves this issue. We see the resolution of this issue as a conflict of laws question as opposed to a pure comity question.

■ Although *Martinez* concerns the issue of the status and relationship between an adopted child and his adoptive parents, the court established two basic principles which are applicable to this case. First, the questions affecting the existence of an adoption and the method of its creation are controlled by the law of the state or nation that creates it, and that the status so created by adoption will be recognized through comity of other states. *Id.* at 681. Second, the court established that questions of descent and distribution are controlled by the state where the realty of the estate is located. *Id.* at 683. The court supported its decision by quoting:

> This view seems to be eminently sound, for the state of adoption, by its statute of adoption, cannot dictate to another state where the property is, the class of persons who shall inherit, or the extent to which they shall inherit, property there located; and the statute of the rei sitae or domicilii decedentis will control, since the question is not whether the child is or is not an adopted child (which relates to the recognition of his status), but whether an adopted child shall, or to the extent to which he shall, inherit (which is a question of decent and distribution).

*Id.* at 682. Doucette was validly adopted in Arizona, the situs state of the adoption, and it establishes the status of adoption that we must recognize under *Martinez. Id.* at 681. However, the estate now in dispute is located in Texas and any questions of descent and distribution must be determined by Texas law. *Id.* at 682. Thus, we are in agreement with the trial court that section 40 of the Texas Probate Code controls the descent and distribution of the estate, and must govern over any otherwise applicable provision of Arizona law which may provide otherwise. TEX. PROB.CODE ANN. § 40 (Vernon 1980).

■ We are asked to consider TEX.FAM. CODE ANN. § 15.07 (Vernon 1986) as to any effect it may have on Doucette's heirship rights. That statute provides in pertinent part:

> A decree terminating the parent-child relationship divests the parent and the child of all legal rights, privileges, duties, and powers, with respect to each other, except that the child retains the right to inherit from and through its divested parent *unless the court otherwise provides....*

TEX.FAM.CODE ANN. § 15.07 (Vernon 1986) (emphasis added). We need not address appellants' contentions with respect to section 15.07 because the Arizona court in no way "otherwise provides" that Doucette was divested of his right to inherit from his divested natural parent, to wit, the decedent. Thus, there was no judicial determination made by the Arizona court that Doucette's right to inherit from his natural father be terminated.

Appellants would also have us apply the above quoted provisions of Arizona law they claim are controlling in this case, as being in effect either at the time of Doucette's adoption in Arizona or at the time of decedent's death, in order to satisfy the "unless the court otherwise provides" language of TEX.FAM.CODE ANN. § 15.07 (Vernon 1986). This we decline to do for reasons discussed under *Martinez,* and we overrule NNCC's point of error number one and also the Pannells' point of error number one. In light of our ruling on these points of error, we need not address Ming Yu and Kim's point of error number two.

■ Appellant NNCC, by its second point of error, alleges that the court erred in awarding prejudgment interest against it at a rate of six percent over and above the amount of the $100,000.00 bond. They argue that their total liability on the bond must be limited to the penalty named therein. NNCC relies on *Howze v. Surety Corp. of America,* 584 S.W.2d 263 (Tex.1979), in which the court stated, "[t]he liability of a surety on its bond is normally determined by the language of the bond itself." *Id.* at 266. However, NNCC's reliance on *Howze* is misplaced because on motion for rehearing in that case, the court awarded pre-

judgment interest against the surety in addition to the recovery for the face amount of the bond. NNCC's second point of error is overruled.

■ Doucette, by two cross-points, complains of the trial court's denial of attorney's fees and of the trial court's use of the wrong date and rate in its calculation of prejudgment interest. To be entitled to appellate review of errors raised by cross-point, an appellee must have apprised the trial court in some manner of his complaints or objections to the judgment. *Visage v. Marshall*, 632 S.W.2d 667, 673 (Tex. App.—Tyler 1982, writ ref'd n.r.e.). Since Doucette made no exception to the judgment, these points cannot be considered on appeal. *Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 541 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (opinion on reh'g), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986); Tex.R.App.P. 52(a). Doucette's cross-points are overruled.

Ming Yu and Kim, in their third point of error, allege that the trial court erred in determining that Kim's affidavit of heirship and disclaimer of inheritance was valid and irrevocable.

Tex.Prob.Code Ann. § 37A (Vernon Supp. 1991) sets forth the requirements of a disclaimer of inheritance, summarized as follows:

1. The disclaimer must be evidenced in writing and notarized;

2. The disclaimer must be filed in the Probate Court (if administration has commenced) not later than nine months after the decedent's death;

3. Copies of the disclaimer shall be delivered in person or mailed by registered or certified mail and received by the legal representative of the transferor of the property to which the disclaimer relates (here, Ming Yu) not later than nine months after decedent's date of death; and

4. Any disclaimer filed and served under this section shall be irrevocable.

■ Appellants first argue under this third point that the disclaimer is not irrevocable because Ming Yu, as a legal representative of the decedent's estate, was not served with a copy of the disclaimer. A review of the record reveals that the trial court, in its Third Findings Of Fact & Conclusions Of Law, specifically found that Ming Yu herself verified the "Application for Declaration of Heirship, to Open Administration and [for] Issuance of Letters of Administration", ("Application"), that had referenced the disclaimer now under attack. Additionally, Doucette requested the trial court to take judicial notice of all instruments included within the "Application", and no objection having been made by Ming Yu or her attorney, the trial court did take judicial notice of same. *Fajkus v. First Nat. Bank of Giddings*, 735 S.W.2d 882, 887 (Tex.App.—Austin 1987, writ denied) (A trial court may take judicial notice of court records, but only in the same or a closely related case.). The trial court then inferred and found that either Ming Yu or her then counsel of record, or both, personally and timely received delivery of the disclaimer. *Canutillo Independent Sch. Dist. v. Kennedy*, 673 S.W.2d 407, 409 (Tex.App.—El Paso 1984, writ ref'd n.r.e.) (notice to an attorney is notice to the client employing him). Moreover, the trial court found that Ming Yu had personal knowledge of the execution and context of the disclaimer within nine months after the death of the decedent. Thus, appellant's argument has no merit and we see no reason to disturb the trial court's finding in this regard.

In their mistaken fact argument under this third point of error, Kim argues that she was under a mistake of fact at the time she executed the disclaimer, thus her disclaimer was invalid, ineffective, and revocable. We also find this argument unpersuasive in spite of the probable unintended results of the property distribution.

■ In its Third Finding of Fact & Conclusions of Law, the trial court found that Kim was not laboring under any mistake of fact when she executed the disclaimer. The following record testimony indicates that Kim was not under any mistake of fact as to forever giving up any property she might have in her father's estate:

Q. Okay. When you signed this document, this **disclaimer of inheritance,**

you realized at that time, you recognized that you were giving up any property that you might have in your father's estate at that time, did you not?

A. Right.

 The Probate Code provides for whose benefit any disclaimer is to be made, that is for the **heirs at law,** and does not permit disclaimers to designate a particular person to take the property. *Tate v. Siepielski,* 740 S.W.2d 92, 94 (Tex.App.—Fort Worth 1987, writ denied). The relevant language in Kim's disclaimer reads:

> I hereby disclaim my inheritance from my father, ... with the understanding that my disclaimed interest will pass, *according to the laws of descent and distribution,* to my natural mother, MING YU PANNELL. [Emphasis added.]

Appellants direct us to *Thompson v. Lawson,* 793 S.W.2d 94 (Tex.App.—Eastland 1990, writ denied), as authority to find this disclaimer ineffective and revocable. We decline to do so as that case is distinguishable from this case on appeal. In *Thompson,* the maker of the partial disclaimer was the beneficiary wife who allegedly executed the disclaimer after she took possession of and exercised control over the property. *Id.* at 96. The issue in that summary judgment case was the effect of an "ineffective" disclaimer. *Id.* We see this disclaimer on appeal as effective and irrevocable because the elements of the disclaimer statute have been satisfied. Tex.Prob.Code Ann. § 37A (Vernon Supp. 1991). We uphold the trial court's ruling and the distribution of the portion of the decedent's estate to Doucette, notwithstanding the seemingly harsh results stemming from Kim's disclaimer. We overrule Ming Yu and Kim's third point of error.

The judgment of the trial court is affirmed.

LATTIMORE, J., concurs without written opinion.