# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00035-CV

---

**Elena Karets, Appellant**

**v.**

**Estate of Victor Gumbs, Deceased, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
### NO. 19-1124-CP4A, THE HONORABLE JOHN B. MCMASTER, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

I respectfully dissent. "Appellate procedure should not be tricky. It should be simple, it should be certain, it should make sense, and it should facilitate consideration of the parties' arguments on the merits. . . . Simplicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000) (Hecht, J., concurring). And yet here we are again, decades later. This appeal has been thwarted in exactly the manner Justice Hecht foretold in his concurrence in *Lane Bank*: Because the Court deems that Karets's request to add finality language to the judgment is not a request for "a 'substantive change,' whatever that means," *see id.* at 315, the parties' proposed order of clarification seeking the addition of finality language to the judgment did not operate to extend the trial court's plenary power over the judgment. *See id.* at 313 (holding that "any change to a judgment made by the trial court while it retains plenary jurisdiction will restart the appellate timetable under Rule 329b(h), *but only a motion seeking a substantive change* will extend the appellate deadlines and the court's

plenary power under Rule 329b(g)" (citation omitted) (emphasis added)); *see also id.* at 315-316 (Hecht, J., concurring) (noting that Rule 329b(g)'s language does not require motion to modify to request "substantive" change to extend plenary power or appellate deadlines).

This conclusion is even more problematic here given that the Court had previously dismissed Karets's first appeal, after determining that the appeal was premature because the judgment disposed of only Karets's claims and thus was not final and appealable. *See Karets v. Gumbs*, No. 03-21-00132-CV, 2021 WL 2834721, at *2 (Tex. App.—Austin July 8, 2021, no pet.) (mem. op.) (citing *e.g.*, *Crowson v. Wakeham*, 897 S.W.2d 779, 782-83 (Tex. 1995)). After our dismissal, Karets returned to the trial court and sought a severance order, as *Crowson* instructs. 897 S.W.2d at 783 (explaining that if order in incomplete phase of probate proceedings is interlocutory because it only disposes of certain parties and issues, "[f]or appellate purposes, it may be made final by a severance order, if it meets the severance criteria"). The trial court signed a severance order on October 4, 2021.[1]

Desiring a clear and unequivocal final judgment, Karets requested findings of fact and conclusions of law on October 25, 2021, noting that "the parties have signed a proposed order of clarification" seeking to modify the February 2021 declaratory judgment by adding finality language. On December 9, 2021, the trial court signed its "Order Regarding Final Judgment on Petition for Declaratory Judgment and Order After Trial Before the Court," which

---

[1] The Court contends that Karets is arguing in her response to the Court's jurisdictional inquiry that the severance order, like the February 2021 judgment, could not be a final judgment because it lacked finality language. However, in her response Karets only argues that the February 2021 judgment lacked finality language. She further argues that the request in her motion for severance seeking to add finality language to the February 2021 judgment was a motion requesting a substantive change in the judgment that served to extend the trial court's plenary power. In her response, Karets does not address what effect, if any, the severance order had on the running of the appellate deadlines.

added the following paragraph to the February 2021 "Final Judgment on Petition for Declaratory Judgment and Order After Trial Before the Court":

> 7. This is a final judgment pertaining to the declaratory judgment action filed by Elena Karets. This judgment disposes of all parties and claims at issue in this cause (19-1124-CP4A) [the new cause number], and is appealable.

The parties and the trial court all operated as if the December 2021 modified judgment was final, and at no phase of this appeal have appellees argued that this Court lacks jurisdiction because Karets filed an untimely notice of appeal.

While the Court has determined that the severance in this case in fact operated to make the February 2021 judgment final, in light of this Court's prior opinion dismissing Karets's first appeal, the possibility that a severance order might be deemed not to meet the severance criteria, and the lack of finality language in the February 2021 judgment, the parties' and the trial court's belt-and-suspenders approach to ensuring the finality of the judgment is understandable. In *Lehmann*, and again in *Elizondo*, the Texas Supreme Court attempted to resolve decades of confusion about when a judgment is final for the purpose of appellate deadlines, and yet the issue still persists. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205-06 (Tex. 2001); *In re Elizondo*, 544 S.W.3d 824, 827 (Tex. 2018) (per curiam). As a practical matter, I would urge the Texas Supreme Court to consider requiring that judgments intended to be final must contain finality language to be treated as final. If finality language can render an otherwise-not-final judgment final, then perhaps it would simplify appellate procedure and appellate courts' jurisdictional analysis to require that judgments actually disposing of all parties and claims in a case or in a discrete phase of a probate proceeding contain clear and unequivocal finality language stating that the outcome is final and appealable. *See Lehmann,* 39 S.W.3d at 206 ("A statement like, 'This judgment finally disposes of all parties and all claims and is appealable,' would

3

leave no doubt about the court's intention."); *cf. In re R.R.K.*, 590 S.W.3d 535, 538 (Tex. 2019) (holding that "an order lacking the unmistakable language of finality—that it resolves all claims between and among all parties and is final and appealable—is ambiguous in a suit under the Family Code when the order does not comport with the statute governing final orders and is otherwise inconclusive as to its intent").

Karets sought a judgment containing the critical language that can render an otherwise-not-final judgment final to prevent this Court from dismissing her appeal again. *See Lehmann*, 39 S.W.3d at 206 (explaining that clear and unequivocal finality language must be given effect despite any other indication that parties did not intend judgment to be final). Because the Court determines that this request to modify the judgment did not seek a substantive change in the judgment, it concludes the trial court's plenary power was not extended under Rule 329b(g), and therefore, Karets's appellate deadlines run from the October 4, 2021 severance.[2]

---

[2] The Court states that "[t]o extend plenary power, a motion to modify, correct or reform a judgment *must assail* the judgment," (slip op. at 4) (emphasis added), relying primarily on cases in which the post-judgment movant sought relief that is functionally equivalent to a motion for new trial. The only case cited by the Court in which the post-judgment movant sought less relief than a new trial or a vacatur of the judgment is *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 313 (Tex. 2000), in which the appellee, after having summary judgment granted in its favor, moved for sanctions and rendition of a new final judgment. The Texas Supreme Court determined that "a motion made after judgment to incorporate a sanction as a part of the final judgment does propose a change to that judgment. Such a motion is, on its face, a motion to modify, correct or reform the existing judgment within the meaning of Rule 329b(g)." *Id.* at 312. Similarly, in this case, by requesting the addition of clear and unequivocal finality language to the February 2021 judgment, Karets proposed a change to the judgment that is more than a clerical change because the addition of such language requires judicial decisionmaking. *See Texas Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 167 (Tex. 2013) ("A clerical error is one which does not result from judicial reasoning or determination." (quoting *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex.1986) (per curiam)). On its face, Karets's request sought a modification to the existing judgment. "A motion to modify, correct, or reform a judgment (as distinguished from motion to correct the record of a judgment under Rule 316 [allowing correction of clerical mistakes])," Tex. R. Civ. P. 329b(g), must mean something more than only motions that attack the existing judgment. Otherwise, the words "correct" and "reform" are rendered meaningless. *See Bethel v. Quilling, Selander, Lownds,*

4

This in turn results in the Court's holding that Karets's January 20, 2022 notice of appeal was untimely because it was filed two days after the expiration of the 15-day window in which we may imply a motion for extension of the deadline. *See* Tex. R. App. P. 26.3; *Verburgt v. Dorner*, 959 S.W.2d 615, 616-17 (Tex. 1997) (holding motion for extension necessarily implied when appellant acting in good faith files instrument in bona fide attempt to invoke appellate court's jurisdiction).

The right to an appeal should not be "lost by an overly technical application of the law." *Lehmann*, 39 S.W.3d at 205. Under these specific circumstances—where the parties and the trial court operated under the assumptions that the October 2021 severance order did not render the February 2021 judgment final, or that even if the severance was effective to render the February 2021 judgment final, the trial court's plenary power had been extended by the request to modify the judgment to add finality language—I would conclude that the trial court's plenary power was extended by Karets's substantive request for a modified judgment that was agreed to by appellees, especially given our prior dismissal of her premature appeal.[3] *Cf. In re R.R.K.*,

---

*Winslett & Moser, P.C.*, 595 S.W.3d 651, 655 (Tex. 2020) (refusing to interpret Texas Rule of Civil Procedure 91a in manner that would render certain aspects of rule meaningless).

[3] Had we instead abated that first appeal pending the trial court's severance order, the outcome here would be different. When we receive a prematurely filed notice of appeal in a civil case, we are "not required to docket and hold an appeal open indefinitely as 'an appellate place holder until there is a final appealable judgment.'" *Fusion Indus., LLC v. Edgardo Madrid & Assocs., LLC*, 624 S.W.3d 843, 849 (Tex. App.—El Paso 2021, no pet.) (quoting *Ganesan v. Reeves*, 236 S.W.3d 816, 817 (Tex. App.—Waco 2007, pet. denied)). Therefore, we generally dismiss for want of jurisdiction attempted appeals from nonappealable interlocutory orders. However, we may treat a case that is appealed before the trial court renders a final judgment as a prematurely filed appeal and permit the defect to be cured. *Id.*; Tex. R. App. P. 27.2; *see also Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001) ("If the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court."). The Rules of Appellate Procedure expressly allow this, providing that in civil cases a prematurely filed notice of appeal "is effective and deemed filed on the day of, but after, the

590 S.W.3d at 540 (explaining in case in which no party had challenged appellate jurisdiction but appellate court had sua sponte questioned its jurisdiction and dismissed appeal that if "an order's finality is not 'clear and unequivocal,' then a reviewing court must examine the record to determine whether the trial court intended the order to be final" (citing *In re Elizondo*, 544 S.W.3d at 827 (quoting *Lehmann*, 39 S.W.3d at 205-06))). Therefore, I would hold that the December 9, 2021 Order of Clarification that added finality language to the February 2021 order is the order that commences the running of the appellate timetable. Counting from December 9, 2021, the last possible date that Karets could have filed the notice of appeal was Tuesday, January 25, 2022, meaning that her appeal was timely filed on January 20, 2022. For this reason, I would not dismiss the appeal for want of jurisdiction.

Because I would not dismiss the appeal for want of jurisdiction, I would consider the merits.[4] On the merits, I would affirm the trial court's judgment declaring that Karets and Victor were not informally married and were co-tenants in the real property located in Texas. In her sole issue, Karets asserts that the trial court erred by determining that there was no legal

---

event that begins the period for perfecting the appeal." Tex. R. App. P. 27.1(a); *Boyce v. Boyce*, No. 01-21-00166-CV, 2022 WL 17419376, at *8 (Tex. App.—Houston [1st Dist.] Dec. 6, 2022, no pet. h.) (mem. op.). Given parties' and courts' continued difficulties with determining issues of finality of judgments and timeliness of appeals in probate cases, perhaps the better practice in those cases would be to abate them when jurisdictional questions arise. *Cf. Bertucci v. Watkins*, No. 03-20-00058-CV, 2022 WL 3328986, at *1 (Tex. App.—Austin Aug. 12, 2022) (en banc opin. & order) (granting motion for en banc reconsideration, reversing dismissal for want of jurisdiction, and abating appeal to allow parties to obtain final, appealable judgment), appeal decided, No. 03-20-00058-CV, 2022 WL 17998480 (Tex. App.—Austin Dec. 30, 2022, no pet. h.) (mem. op.).

[4] The appeal was fully briefed by the parties before the Court notified Karets by letter that it appeared that the Court might lack jurisdiction over the appeal. The appellees neither raised the jurisdictional issue in their briefing nor addressed the issue after it was raised by the Court.

relationship conferring marital rights under both California law and Texas law because the evidence established that she and Victor "met the requirements for entering into a marriage under either Texas law or the law of the state or country ("foreign state") where the marriage purportedly occurred," relying on *In re Estate of Loveless*, 64 S.W.3d 564, 575 (Tex. App.—Texarkana 2001, no pet.) (addressing which jurisdiction's law to apply when determining validity of marriage in case involving two competing marriages).

I believe that the evidence supports the trial court's determination that Karets and Victor did not establish the elements of an informal marriage under Texas law because there is no evidence in the record to support either that they agreed to be married or that they resided together in Texas. *See* Tex. Fam. Code § 2.401 (establishing that existence of informal marriage may be proved by evidence that parties "agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married").[5]

Moreover, the evidence in the record does not show that Karets and Victor met the requirements for a marriage in California. Instead, Karets presented evidence that she and Victor had entered into a registered domestic partnership in California. *See* Cal. Fam. Code § 297 (defining "[d]omestic partners" as "two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring" and requiring that "[n]either

---

[5] In *Obergefell v. Hodges*, the United States Supreme Court held that same-sex couples may exercise the fundamental right to marry in all states and also held that "there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." 576 U.S. 644, 675-76 (2015). Therefore, that part of Section 2.401 limiting informal marriage to "the marriage of a man and woman" has been declared unconstitutional. *See Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017), *superseded by statute on other grounds*, *Hughes v. Tom Green County*, 573 S.W.3d 212, 216 (Tex. 2019)).

7

person is married to someone else or is a member of another domestic partnership with someone else that has not been terminated"). Under California law,

> A surviving registered domestic partner, following the death of the other partner, shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon a widow or a widower.

Cal. Fam. Code § 297.5.

Karets argued in her summary-judgment motion that she met her burden of proving up the marriage under the requirements of both states, contending that the trial court should apply California law and treat Karets as Victor's spouse at the time of his death. On appeal, Karets again contends that application of both Texas law and California law "result in the same outcome: that a legal relationship existed that conferred on [Victor] and [Karets] the rights of a married couple." She further asserts that if we determine that there would be a different outcome under each state's law, this difference in outcomes raises a choice-of-law issue and we should apply California law.

I disagree. While we look to the law of the state to resolve questions of parties' status created by an act such as marriage or adoption, "questions of descent and distribution are controlled by the state where the realty of the estate is located." *Northwestern Nat'l Cas. Co. v. Doucette*, 817 S.W.2d 396, 399 (Tex. App.—Fort Worth 1991, writ denied) (citing *Martinez v. Gutierrez*, 66 S.W.2d 678 (Tex. Comm'n App. 1933, holding approved) (holding that child's adoption status was governed by law of Mexico, where adoption occurred, but adopted child's right to inherit land in Texas was governed by laws of this state)). The legal question presented here is not whether Karets and Victor had a valid marriage (formal or informal) under California

8

law. The evidence established that they had a registered domestic partnership. Domestic partnership is not the same as marriage. While California law confers certain state-law rights and benefits on domestic partners that are the same state-law rights and benefits provided to spouses, Texas does not provide for or recognize domestic partnerships, *see* Tex. Fam. Code § 6.204 (prohibiting recognition of civil unions),[6] and thus our state's law does not confer state-law rights and benefits of spouses on those parties who are registered as domestic partners in another state.

Karets affirmatively demonstrated that she and Victor did not enter into a marriage under California law; they entered into a registered domestic partnership. While California law confers upon domestic partners the same rights and benefits that spouses have, Texas laws of descent and distribution do not. Therefore, I would affirm the trial court's judgment, and I dissent from the Court's dismissal of the appeal for want of jurisdiction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Filed: March 10, 2023

---

[6] The United States Supreme Court's opinion in *Obergefell* did not address or affect statutory provisions banning recognition of civil unions other than marriage (regardless of the gender of the participants). 576 U.S. at 675-76 (holding that "there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character").