Joseph W. McCUEN, et al., Appellants,

v.

George Philips HUEY, Jr., Appellee.

No. 10–06–00401–CV.

Court of Appeals of Texas,
Waco.

April 30, 2008.

---

Michael J. Canon, Midland, D. Scott Cain, Bradley & Cain, LLC, Cleburne, J.R. Patterson, Henderson, for appellants.

Jeffrey S. Davis, Michael J. Rogers, PC, Cleburne, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

This is a declaratory judgment/interpleader action instituted by Chesapeake Exploration Limited Partnership to determine the ownership of certain non-participating royalty interests. The trial court granted George Philips Huey, Jr.'s summary-judgment motion, declaring him to be the sole owner of these interests. The primary issues to be resolved in this appeal are: (1) whether George Philips Huey, Jr. or the heirs of his aunt Mary Huey own these non-participating royalty interests; (2) whether Chesapeake, which owns the pertinent working interests, may be required to pay the attorney's fees of an attorney ad litem appointed to represent the interests of various parties served by publication; and (3) whether those of Mary's heirs who appeared and retained counsel are entitled to their attorney's fees. We will affirm.

## Background[1]

The non-participating royalty interests in dispute lie within two tracts of acreage which were owned by brothers Paul Huey and George Philips Huey, Sr. ("Phil, Sr."). They inherited "Tract 1" from their father in the 1920's. They acquired "Tract 2" by two separate conveyances in the 1930's. Paul married Mary Huey in 1946. Paul, Phil, Sr. and their wives executed a warranty deed in 1950 conveying Tract 2 to the Dunsons, "reserving to [them]selves, however, a one half un-divided interest in and to the usual one eighth oil, gas and other minerals royalty (as that term is understood in Texas) of all oil, gas and other minerals in, on or under this property." A few days later, Paul and Mary executed a warranty deed conveying Tract 1 to Phil, Sr. with an identical reservation to "[them]selves."

Paul died in 1960, and his will was probated in Alabama, where Mary and he were then domiciled. His will devised his "undivided one-half interest" in the disputed lands to Phil, Sr. and named Mary as beneficiary of the residue of his estate.

Appellee George Philips Huey, Jr. ("Phil, Jr.") is the undisputed successor to any interest his mother and father held in the non-participating royalty interests at issue.

Mary died in 1967, and her will was probated in Alabama. Her will named twenty-five beneficiaries in various percentages as the devisees of the residue of her estate, which would include any interest she owned in the non-participating royalty interests at issue.[2]

Chesapeake acquired the working interests in 2000. It filed this suit to determine ownership of the non-participating royalty interests. Several of Mary's heirs (hereinafter, "Ettinger") appeared and filed a general denial.[3] Mary's niece Joan Eliza-

---

1. Much of the background facts come from a joint stipulation the parties made.

2. The residuary devisees named in Mary's will are: Joseph W. McCuen (9%), Donald H. and Ellen Hill McCuen (9%), Edwin and Louise McCuen Buck (9%), Edna McCuen (9%), Phil, Jr. (9%), Phil, Sr. and wife Homerette or the survivor of them (15%), Mildred Schultz McCuen (4%), Frederick H. McCuen (3%), John Timothy McCuen (3%), Margaret McCuen Klopfenstein (3%), Lois McCuen Baldwin (3%), Phyllis McCuen Powers (3%), Patricia McCuen (3%), Mary Ellen McCuen Stieler (3%), Donald H. McCuen, II(3%), Douglas Buck (3%), Sarah Buck Lawrence (3%), Evelyn Olson (3%), Joan Elizabeth Hooker (0.75%), Nellie S. Borntraeger (0.75%), Mary U. Stansel (0.75%), and Minnie Gobel (0.75%).

3. The Ettinger defendants include: Sarah Ettinger, Douglas Buck, Carol McCuen, Margaret McCuen Precilio, Phyllis McCuen Powers, and Mary Ann McCuen Culberson.

beth Hooker Clark filed a pro se answer by letter stating her belief that she had inherited a percentage of the interests from Mary under her will. The court approved service by publication on several of Mary's heirs whose whereabouts are unknown (hereinafter, "McCuen") and appointed an attorney ad litem to represent their interests.[4]

The parties filed a Stipulation of Facts as previously noted, expressly reserving the right: (1) "to object to any of the stipulated facts on grounds of irrelevancy or immateriality"; and (2) "to offer evidence as to all facts not expressly agreed upon." Chesapeake, Phil, Jr., Ettinger, McCuen, and Clark all signed this stipulation.

Phil, Jr. filed a traditional summary-judgment motion presenting two primary arguments to support his contention that he is the sole owner of the disputed interests. First, Phil, Jr. contends that Phil, Sr. inherited these interests from Paul under his will, and Phil, Jr. in turn obtained them from his father by mesne conveyances in part and by inheritance in part. And second, Phil, Jr. contends that Mary's inclusion as a grantor in the 1950 warranty deeds conveying Tracts 1 and 2 was only pro forma and not indicative of a gift from Paul to Mary of his royalty interests.

Ettinger filed a hybrid summary-judgment motion containing both no-evidence and traditional summary-judgment claims. Ettinger's summary-judgment evidence includes: (1) the Petition for Final Settlement filed by Mary in Paul's probate proceedings, in which Mary stated that Paul's interests had been disposed of before his death; and (2) the probate court's decree that Mary was Paul's sole legatee and devisee. Based on these probate documents, Ettinger contends that neither Chesapeake nor Phil, Jr. can produce "more than a scintilla of evidence which would raise a material issue of fact regarding the transfer of Paul Huey's royalty interest in his probate proceedings."

In the traditional portion of the summary-judgment motion, Ettinger argues that she is entitled to judgment as a matter of law because: (1) the aforementioned probate proceedings establish that she and Mary's other heirs inherited the disputed interests; (2) the warranty deeds referenced in Phil, Jr.'s summary-judgment motion constituted a gift from Paul to Mary or memorialized such a gift; or (3) ownership of Paul's royalty interests is governed by the laws of intestate succession because those interests were not addressed by the probate court and any probate of Paul's will in Texas is now barred by limitations.

McCuen filed a traditional summary-judgment motion contending, much like Ettinger, that: (1) the Alabama probate proceedings establish that Paul gave the royalty interests to Mary before his death; and (2) the warranty deeds and other pertinent documents memorialize this gift.

Phil, Jr. challenged these contentions in his summary-judgment response. First, he argued that Ettinger and McCuen failed to conclusively establish a parol gift of the interests from Paul to Mary because there is no evidence that Mary took possession of these interests or made valuable and permanent improvements thereto. Second, Phil, Jr. argued that the Alabama probate proceedings did not address the royalty interests presently in dispute be-

4. The McCuen defendants include: Joseph W. McCuen, Donald H. McCuen, Ellen McCuen, Louise McCuen Buck, Edwin Buck, Edna McCuen, Mildred Schultz McCuen, Frederick H. McCuen, John Timothy McCuen, Margaret McCuen Klopfenstein, Lois McCuen Baldwin, Patricia McCuen, Mary Ellen McCuen Stieler, Donald H. McCuen, II, Evelyn Olson, Nellie S. Borntraeger, Mary U. Stansel, Minnie Gobel, and their heirs, successors, and assigns.

cause Phil, Sr. and Mary "overlooked" these interests.

In Ettinger's response to Phil, Jr.'s summary-judgment motion, she first objected to two portions of the supporting affidavit Phil, Jr. signed and attached to his motion on the basis that these portions contained inadmissible conclusory statements. On the merits, Ettinger sought to distinguish one of the cases relied on by Phil, Jr.; she reurged her contention that the Alabama probate proceedings are conclusive on the ownership question; and she argued that Phil, Jr. was not entitled to a summary judgment on Ettinger's and McCuen's "gift theory" because he failed to specify which elements of this theory he was challenging.

McCuen raised similar objections to Phil, Jr.'s affidavit in his summary-judgment response. Otherwise, McCuen merely challenged Phil, Jr.'s contentions as speculative and inadequate to justify a summary judgment in his favor.

Chesapeake, Ettinger, and McCuen all sought attorney's fees. Chesapeake did so by motion supported by affidavit of counsel. Ettinger requested attorney's fees in her summary-judgment motion and supported this request with an affidavit of counsel. McCuen initially filed a motion for attorney's fees without supporting proof. Phil, Jr. requested in his summary-judgment motion that each party pay his or her own attorney's fees.

Near the conclusion of the summary-judgment hearing, McCuen's counsel advised the court that he had an attorney's-fee affidavit ready to present to the court at that moment or on another day if the court preferred to address attorney's fees in a later hearing. After hearing additional argument and inviting each party to submit a proposed judgment, the court advised McCuen's counsel that he would prefer to address attorney's fees in that hearing. Chesapeake's counsel stated that he would not object to "whatever the Court determines to be the appropriate amount of attorney's fees." Phil, Jr.'s counsel stated that he had no objection, "knowing that [Chesapeake] is going to take care of those fees." Chesapeake's counsel promptly responded that Chesapeake had not agreed to "take care" of those fees.

McCuen's counsel suggested that he submit his affidavit to the court "and then maybe allow all the parties to submit a very, very brief brief on who should pay for it." Chesapeake's counsel stated on the record that he had no objection to the admission of the affidavit, and it was admitted. Counsel for Phil, Jr. and for Ettinger both agreed that Chesapeake should be required to pay McCuen's attorney's fees. Chesapeake's counsel argued that Chesapeake should not have to pay these fees and further advised the court that Chesapeake wanted the court to order one of the other parties to pay Chesapeake's attorney's fees. The court took the issue under advisement.

The court signed a final judgment granting Phil, Jr.'s summary-judgment motion and ordering Chesapeake to pay McCuen's trial attorney's fees. McCuen filed a combined motion for leave to file supplemental evidence on the issue of appellate attorney's fees and motion to modify the judgment to include appellate attorney's fees. This pleading was supported by affidavit of counsel stating what counsel believed to be reasonable and necessary appellate attorney's fees.

In a post-judgment hearing, Phil, Jr. and Chesapeake disputed, among other things, whether the appellate attorney's fees sought by McCuen were reasonable and necessary. However, Ettinger agreed that the fees sought by McCuen were reasonable and necessary. After the hearing,

the court granted McCuen leave to file the additional evidence by signed order. The court also signed an amended judgment awarding McCuen the appellate attorney's fees sought in the motion.

### Standards of Review

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In reviewing a summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007) (per curiam) (citing *Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam); *City of Keller v. Wilson,* 168 S.W.3d 802, 822–24 (Tex. 2005)). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire,* 236 S.W.3d at 756 (citing *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006) (per curiam); *Spates,* 186 S.W.3d at 568).

When competing motions for summary judgment are filed and some are granted while others denied, the general rule is that an appellate court should determine all questions presented and render the judgment the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex.2004); *Am. Hous. Found. v. Brazos County Appraisal Dist.,* 166 S.W.3d 885, 887 (Tex.App.-Waco 2005, pet. denied). However, an appellate court may reverse and remand if resolution of the pertinent issues rests in disputed facts or if the parties' motions are premised on

---

5. Because no preservation is required, we need not determine whether the trial court implicitly overruled Ettinger's objection. *Cf.*

---

different grounds. *See Sarandos v. Blanton,* 25 S.W.3d 811, 814 & n. 5 (Tex.App.-Waco 2000, pet. denied).

### Summary–Judgment Objections

Ettinger contends in his second issue that the court abused its discretion by overruling her objections to Phil, Jr.'s summary-judgment proof. Phil, Jr. responds that Ettinger failed to preserve this issue for review because she did not obtain a written ruling on the objections and, in the alternative, the issue is moot because the substance of the statements which are the focus of Ettinger's objections was established by the parties' stipulation.

■ With regard to preservation, an objection to the conclusory nature of summary-judgment evidence is a challenge to the substance of the evidence and need not be preserved for appellate review.[5] *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.,* 127 S.W.3d 235, 241–42 (Tex.App.-Waco 2003, no pet.).

Ettinger's objections were directed to the following statements in Phil, Jr.'s affidavit:

- My father and his younger brother, Paul Huey, inherited 2/3 of the 217–3/4 acre "W.G. Huey Home Farm," share and share alike, from their father W.G. Huey in 1933 and then inherited the remaining 1/3 life estate left to his second wife, Mollie Huey, in 1942.
- Beginning in 1933, these farms were managed together, primarily by my father, Phil. G. Huey, with the help of two tenant farmers.
- In the deed to my father of the "W.G. Huey Home Farm," both Paul and Mary signed as grantors, although it

*Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.,* 127 S.W.3d 235, 240–41 (Tex.App.-Waco 2003, no pet.).

was Paul's separate property which he inherited prior to his marriage to her.

- In the conveyance to the Dunsons, again Mary co-signed with her husband as grantors, even though this "West Farm" was Paul's separate property acquired in 1934 and 1938 before his marriage.

Ettinger argues that the first two statements are conclusory because they refer "to facts which supposedly occurred when [Phil, Jr.] was but an infant and toddler." Ettinger argues that the latter two statements are conclusory insofar as they seek to characterize the property as Paul's separate property.

Nevertheless, the parties' stipulation states the same or substantially similar facts regarding the manner by which Paul and Phil, Jr. acquired their respective interests in Tracts 1 and 2. The stipulation also explicitly states that the interest Paul held in these properties was "his separate property" in October 1950, before he (with Mary) executed the deeds mentioned in Phil, Jr.'s affidavit in December 1950.

"A stipulation is a binding contract between the parties and the court." *Solares v. Solares,* 232 S.W.3d 873, 883 (Tex.App.-Dallas 2007, no pet.); *Houston Lighting & Power Co. v. City of Wharton,* 101 S.W.3d 633, 641 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The contents of a stipulation constitute judicial admissions, are conclusive on the issues addressed, and estop the parties from claiming to the contrary. *See Shepherd v. Ledford,* 962 S.W.2d 28, 33 (Tex.1998); *So-*

*lares,* 232 S.W.3d at 883; *Houston Lighting & Power,* 101 S.W.3d at 641.

Here, Ettinger stipulated to the facts and characterizations which she contends should not have been included in Phil, Jr.'s affidavit. Because of the stipulation, she is estopped to make this claim. *Id.* Accordingly, we overrule Ettinger's second issue.

### Parol Gift

McCuen contends in his third issue that the summary-judgment evidence conclusively establishes that Paul made a parol gift of the disputed royalty interests to Mary before his death. Ettinger makes the same argument as part of her first issue.

The statute of conveyances requires that a conveyance of real property "be in writing" and "subscribed and delivered by the conveyor" or his agent. TEX. PROP.CODE ANN. § 5.021 (Vernon 2003). The current version of the statute does not vary appreciably from the version in effect in 1950 when the gift was allegedly made.[6]

To establish a parol gift of an interest in real property (and avoid the requirements of the statute of conveyances), a party must show: (1) a gift in praesenti, that is, a present gift; (2) possession under the gift by the donee with the donor's consent; and (3) permanent and valuable improvements by the donee with the donor's consent or other facts demonstrating that the donee would be defrauded if the gift were not enforced. *See Flores v. Flores,* 225 S.W.3d 651, 655 (Tex.App.-El Paso 2006, pet. denied); *see also Dawson v. Tumlinson,* 150 Tex. 451,

---

6. The former article 1288 of the Revised Civil Statutes of 1925 provided:

No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and de-

livered by the party disposing of the same, or by his agent thereunto authorized by writing. Act effective Sept. 1, 1925, 39th Leg., R.S., § 1, art. 1288 (repealed 1983) (current version at TEX. PROP.CODE ANN. § 5.021 (Vernon 2003)).

242 S.W.2d 191, 192–93 (1951) (citing *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921)). As the Court explained in *Dawson*, the rule for parol gifts of real property is the same as that for parol sales "except there must be evidence of gift, and of course proof of a consideration is not required." *Dawson*, 242 S.W.2d at 192–93.

■ Here, McCuen and Ettinger claim that the two deeds executed by Paul and Mary in 1950 either constituted a gift from Paul to Mary or memorialized such a gift. Ettinger in particular argues that these deeds establish a gift of one-half of Paul's royalty interest to Mary, while Paul reserved one-half for himself. The parties stipulated that in the first of those deeds (dated December 2, 1950), Paul, Phil, Sr. and their wives (Mary and Homerette) conveyed Tract 2 to the Dunsons, "but reserved a non-participating royalty interest described as 'a one-half undivided interest in and to the usual one eighth oil, gas and other minerals royalty (as that term is understood in Texas) of all oil, gas and other minerals in, on or under this property.'" They similarly stipulated that in the second deed (dated December 7, 1950), Paul and Mary conveyed Tract 1 to Phil, Sr. "but reserved a non-participating royalty interest described as 'a one-half undivided interest in and to the usual one eighth oil, gas and other minerals royalty (as that term is understood in Texas) of all oil, gas and other minerals in, on or under this property.'"

Phil, Jr. contends that the decision of the Texarkana Court of Civil Appeals in *McKee v. Douglas*, 362 S.W.2d 870 (Tex. Civ.App.-Texarkana 1962, writ ref'd n.r.e.), controls. There, the court rejected a contention very similar to that presented by McCuen and Ettinger.

Appellants by their second point contend to the effect that the deed from I.A. McKee and Annie McKee to the Douglases which reserved the 1/4th royalty interest passed title to Annie McKee in her own individual right and that she had never signed an instrument conveying the interest to appellees. This point is clearly without merit under this record and is overruled.

The 38 1/2 acres was the separate property of I.A. McKee, it was not homestead, and Mrs. McKee had no character of interest or title in said tract. Her joinder in the conveyance to the Douglases was unnecessary. The reservation or exception of the royalty interest in the deed could inure only to the benefit of the owner, I.A. McKee. Such reservation or exception did not amount to a gift to Mrs. McKee of a portion of such excepted or reserved royalty interest. The only way for I.A. McKee to have made a gift to Mrs. McKee of an interest in his separate property would have been by the execution of a deed. See Art. 1288, V.A.C.S. Also see 27 Tex. Jur.2d *Gift*, Sec. 30, wherein it is stated: 'The only method of concurrently giving an estate in land and perfecting the gift is by a deed conveying the property to the donee.' Since I.A. McKee never executed such a deed to Mrs. McKee she never acquired any interest in the royalty in question by gift or in any other manner under the facts in this case.

*Id.* at 875–76 (some citations omitted).

The principle set out in *McKee* has been consistently followed in other cases in which a grantor with no record title joined his or her spouse in the execution of a deed which purported to reserve a mineral interest to the grantors and later claimed (or his or her heirs later claimed) that the reservation created an enforceable property interest. *See Angell v. Bailey*, 225 S.W.3d 834, 840 (Tex.App.-El Paso 2007,

no pet.); *Little v. Linder,* 651 S.W.2d 895, 900–01 (Tex.App.-Tyler 1983, writ ref'd n.r.e.); *Canter v. Lindsey,* 575 S.W.2d 331, 335 (Tex.Civ.App.-El Paso 1978, writ ref'd n.r.e.); *Ryan v. Fort Worth Nat'l Bank,* 433 S.W.2d 2, 7–8 (Tex.Civ.App.-Austin 1968, no writ); *see also* Joseph W. McKnight, *Family Law: Husband and Wife,* 38 Sw. L.J. 131, 136 & nn. 56–62 (1984).

As the court in *McKee* explained, "The only way for [a donor spouse] to have made a gift to [his spouse] of an interest in his separate property would have been by the execution of a deed." *McKee,* 362 S.W.2d at 876; *accord* McKnight, 38 Sw. L.J. at 136 n. 62 ("In order for the husband to have any interest in the mineral reservation, the wife would have had to convey such interest to him before conveying the land to a third party.").

■ McCuen also cites a memorandum opinion of this Court in which we addressed the "well established" proposition "that when a husband uses separate property consideration to pay for land acquired during the marriage and takes title to the land in the name of husband and wife, it is presumed he intended the interest placed in his wife to be a gift." *Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex. 1975) (cited by *Hoover v. Koss,* No. 10–04–00015–CV, 2005 WL 1488070, at *2 (Tex. App.-Waco June 22, 2005, no pet.) (mem. op.)). McCuen argues that this presumption should likewise apply when a spouse conveys separate property to a third party but reserves an interest in that property in the name of both spouses. However, we hold that the presumption does not apply. Here, Paul did not "pay" any consideration to reserve the disputed mineral interests. *Cf. id.* Thus, the presumption applies only when a spouse uses separate property consideration to acquire a new interest in real property and takes title to that interest in the name of both spouses.

Applying *McKee* to the elements required to establish a parol gift of real property, the reservations of mineral interests in the deeds do not conclusively establish that Paul made a gift in praesenti to Mary of any interest in Tract 1 or 2. *See Dawson,* 242 S.W.2d at 192–93; *Flores,* 225 S.W.3d at 655.

McCuen and Ettinger also contend that these reservations served to memorialize a prior parol gift of one-half of Paul's interest in Tracts 1 and 2 to Mary. The second element for establishing a parol gift of realty is possession under the gift by the donee with the donor's consent. *Id.* To prove this element, a plaintiff must show "actual possession" of the realty. *Powell v. Wiley,* 141 Tex. 74, 170 S.W.2d 470, 471 (1943); *Hernandez v. Alta Verde Indus., Inc.,* 666 S.W.2d 499, 503 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.); *accord Harris v. Potts,* 545 S.W.2d 126, 127 (Tex. 1976) (*Hooks v. Bridgewater* "requires actual possession"). However, the summary-judgment evidence conclusively establishes that Paul and Mary lived in Alabama at the time of the alleged gift, and Mary remained there until her death. Thus, McCuen and Ettinger failed to conclusively establish that Mary took "actual possession" of any interest in Tract 1 or 2. *Cf. Natural Gas Pipeline Co. of Am. v. Pool,* 124 S.W.3d 188, 192–93 (Tex.2003) (to establish "actual possession" of severed oil or gas interest for limitations title, there must be "drilling and production of oil or gas").

Accordingly, we overrule McCuen's third issue and that part of Ettinger's first issue in which she contends that Paul made a parol gift to Mary.

## Conveyance

■ McCuen contends in his second issue that the devise of the Johnson County

property in Paul's will was adeemed because Paul conveyed the disputed royalty interests to Mary in the 1950 deed reservations. Ettinger likewise contends as part of her third issue that Paul conveyed the disputed interests to Mary. However, a grantor with no record title cannot create title in herself by joining her spouse in the execution of a deed which purports to reserve a mineral interest to the grantors. *See Angell,* 225 S.W.3d at 840; *Little,* 651 S.W.2d at 900–01; *Canter,* 575 S.W.2d at 335; *Ryan,* 433 S.W.2d at 7–8; *McKee,* 362 S.W.2d at 875–76; *see also* McKnight, 38 Sw. L.J. at 136 & nn. 56–62. Therefore, we overrule McCuen's second issue and that part of Ettinger's third issue in which she contends that Paul conveyed the disputed interests to Mary.

### Paul's Probate Proceedings

McCuen contends in his first issue and Ettinger contends in her first and third issues that Phil, Jr. failed to conclusively establish that the disputed interests passed to Phil, Sr. under the terms of Paul's will. McCuen and Ettinger rely primarily on: (1) an affidavit Phil, Sr. filed with the Alabama probate court stating that any interest Paul had in Tracts 1 and 2 had been disposed of before his death; and (2) the Alabama court's decree that Mary was Paul's sole legatee and devisee of any property which passed under his will. Phil, Jr. responds that Phil, Sr. did not disclaim his interest in the subject property, Mary did not inherit the subject property in the Alabama probate proceedings, and thus, Phil, Sr. inherited the disputed royalty interests under the terms of Paul's will. To resolve these contentions,

we must first determine whether to apply Alabama law or Texas law.

### Choice of Law

 When a will has been duly probated in another state, the judgment of the probate court must be given full faith and credit in this state. U.S. CONST. art. IV, § 1; *Holland v. Jackson,* 121 Tex. 1, 37 S.W.2d 726, 727–28 (1931). "The validity of the judgment is determined by the laws of the state where it was rendered." *Bard v. Charles R. Myers Ins. Agency, Inc.,* 839 S.W.2d 791, 795 (Tex.1992); *accord Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.,* 132 S.W.3d 477, 484 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). However, a party seeking to establish the validity of such a judgment must: (1) file a timely motion requesting the court to take judicial notice of the applicable law of the other state, and (2) provide the court with "sufficient information" regarding the law to be noticed. *See* TEX.R. EVID. 202; *Brown v. Lanier Worldwide, Inc.,* 124 S.W.3d 883, 894 n. 20 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 769 (Tex. App.-Corpus Christi 1999, pet. denied); Olin Guy Wellborn, III, *Judicial Notice Under Article II of the Texas Rules of Evidence,* 19 ST. MARY'S L.J. 1, 26–27 (1987). Failure to comply with these requirements results in a presumption that the law of the other state is the same as Texas law.[7] *See Mindis Metals,* 132 S.W.3d at 487; *Brown,* 124 S.W.3d at 894 n. 20; *Pittsburgh Corning,* 1 S.W.3d at 769; Wellborn, 19 St. Mary's L.J. at 27.

 Here, no party asked the trial court to take judicial notice of the applica-

---

7. A trial court may in its discretion *sua sponte* take judicial notice of the other state's law, but it is not required to do so. *See* TEX.R. EVID. 202; *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 769 (Tex.App.-Corpus Christi 1999, pet. denied); Olin Guy Wellborn, III, *Judicial Notice Under Article II of the Texas Rules of Evidence,* 19 ST. MARY'S L.J. 1, 27 (1987).

ble laws of Alabama, and there is no indication that the court undertook to do so on its own motion. Therefore, we will presume that the pertinent law of Alabama is identical to Texas law. *Id.*

*Disclaimer*

McCuen and Ettinger contend that Phil, Sr. disclaimed any interests he might have been entitled to under Paul's will by an affidavit Phil, Sr. filed with the Alabama court.

Item Three of Paul's will provides:

I give, devise and bequeath to my beloved brother, should he survive me or in the event he predeceases me to his surviving issue, my undivided one-half interest in approximately four hundred fifty acres of farm land and the equipment located on said farm in Johnson County, Texas. This is the property which I now jointly own with my said brother Phil Huey.

Phil, Sr.'s "disclaimer" provides in pertinent part:

That in the last will and testament of his brother, Paul Huey, certain real property and equipment located thereon in Johnson County, Texas was devised and bequeathed to him.

That he knows of his own knowledge and participated in the conveyance of said property and equipment by himself and Paul Huey prior to the death of Paul Huey, and that all of the property covered by ITEM THREE of the last will and testament of Paul Huey has been disposed of, prior to Paul Huey's death, and that there was no property to pass to him under the terms of Paul Huey's will.

That he does hereby consent to the final settlement of the estate of Paul Huey by Mary Huey, the sole legatee, devisee, beneficiary and distributee of all of the property owned by Paul Huey at his death and passing under the last will and testament of Paul Huey, deceased.

In Mary's petition for final settlement of the estate, she affirmatively stated, "All of the property covered by ITEM THREE of the Will had been disposed of by the Decedent prior to his death and none of that property passed under the terms of the Will."

The Alabama probate court's decree of final settlement makes no reference to any property in Johnson County, Texas and declares Mary to have been "the sole legatee and devisee of the property passing under the last will and testament of Paul Huey."

Section 37A of the Texas Probate Code provides for a written disclaimer by a beneficiary of any property or interest he would otherwise inherit. TEX. PROB.CODE ANN. § 37A (Vernon Supp.2007). Section 37A was first enacted in 1971.[8] *See* Act of May 29, 1971, 62d Leg., R.S., ch. 979, § 1, 1971 Tex. Gen. Laws 2954 (amended 1977). The Legislature enacted section 37A at least in part because Texas law at that time "relating to the disclaimer of property under any will of or by inheritance from a decedent [was] vague and unclear." Act of May 29, 1971, 62d Leg., R.S., ch. 979, § 2, 1971 Tex. Gen. Laws at 2956; *see also Badouh v. Hale,* 22 S.W.3d 392, 396 (Tex. 2000) ("The Legislature enacted section 37A to clarify Texas's disclaimer law."). Nevertheless, a beneficiary's right to dis-

---

8. In its present form, section 37A applies to only those disclaimers made "on or after September 1, 1977." TEX. PROB.CODE ANN. § 37A(a) (Vernon Supp.2007). This particular date was apparently selected to coincide with the 1977 amendments to section 37A and has been retained ever since. *See* Act of May 23, 1977, 65th Leg., R.S., ch. 769, § 1, 1977 Tex. Gen. Laws 1918 (amended 1979).

claim his or her inheritance has long been recognized in Texas.[9] *See First City Nat'l Bank of Houston v. Toombs*, 431 S.W.2d 404, 406 (Tex.Civ.App.-San Antonio 1968, writ ref'd n.r.e.) ("The right of a devisee or legatee under a will to decline a devise or bequest in toto is generally recognized."); *see also Smith v. Negley*, 304 S.W.2d 464, 468 (Tex.Civ.App.-Austin 1957, no writ); *Torno v. Torno*, 43 Tex.Civ.App. 117, 95 S.W. 762, 763 (Tex.Civ.App.-Galveston 1906, writ ref'd).

An annotation on the topic of disclaimers recognizes that some courts have found particular disclaimers to be ineffective "where made under a misapprehension as to or in ignorance of [the beneficiary's] rights or interest accruing [under the will]." C.P. Jhong, Annotation, *What Constitutes or Establishes Beneficiary's Acceptance or Renunciation of Devise or Bequest*, 93 A.L.R.2d 8, 58 (1964).[10] This approach has support in at least one early Texas decision in which it was argued that the plaintiff was estopped to claim certain property as the sole heir of her father because she had elected to take the property under another relative's will. *See Packard v. De Miranda*, 146 S.W. 211, 212–13 (Tex.Civ.App.-San Antonio 1912, writ ref'd). The court rejected this contention because the plaintiff

> was ignorant of the language in which the will and deeds were written, and ignorant of the facts and circumstances surrounding the property and its disposal. To hold her in her ignorance and innocence bound as to an election would

be to make a laughing stock of equity and a burlesque of justice. She could not have made an intelligent choice, if the will had demanded of her an election, because of her ignorance of the facts in connection with the property. *Id.* at 215.

■ From these authorities, we conclude that, to be effective, a disclaimer of an inheritance is enforceable against the maker only when it has been made with adequate knowledge of that which is being disclaimed. *Cf. Nw. Nat'l Cas. Co. v. Doucette*, 817 S.W.2d 396, 400–01 (Tex.App.-Fort Worth 1991, writ denied) (disclaimer enforceable even though maker was mistaken about who would inherit disclaimed property as a result of disclaimer).

■ Here, the disputed royalty interests were omitted from the administration of Paul's probate estate.[11] In fact, Mary herself stated in the petition for final settlement of Paul's estate that "none of [the Johnson County] property passed under the terms of the Will" (which necessarily includes the residuary clause). At most, Phil, Sr.'s affidavit reflects a mistaken understanding on his part (shared by Mary) that Paul did not own any interest in the Johnson County property at the time of his death. Therefore, we hold that Phil, Sr. did not knowingly disclaim his inheritance of the disputed royalty interests.

### The Probate Court's Judgment

■ McCuen and Ettinger also contend that the disputed interests passed to

---

**9.** The same holds true in Alabama. *See, e.g., Trustees of Cumberland Univ. v. Caldwell*, 203 Ala. 590, 84 So. 846, 851 (1919) (op. on reh'g).

**10.** The Supreme Court cited the Jhong annotation as authority in *Badouh*. *See Badouh v. Hale*, 22 S.W.3d 392, 396 (Tex.2000).

**11.** Even if these interests had been disclaimed by Phil, Sr. as McCuen and Ettinger claim,

they would have passed to Phil, Jr. as Phil, Sr.'s sole "surviving issue" under the terms of Paul's will. *See* Tex. Prob.Code Ann. § 37A(c) (Vernon Supp.2007) ("Unless the decedent's will provides otherwise, the property subject to the disclaimer shall pass as if the person disclaiming or on whose behalf a disclaimer is made had predeceased the decedent").

Mary at Paul's death because the Alabama probate court decreed that Mary was Paul's sole legatee and devisee of any property which passed under his will.

The Alabama court's Decree of Final Settlement provides in pertinent part:

> And it further appearing to the Court that Mary Huey is the sole legatee and devisee of the property passing under the last will and testament of Paul Huey, deceased, and that Mary Huey as executrix has complied with the terms of said will by paying over and delivering to herself all of the property and assets in her hands belonging in the estate except certain stocks and bonds hereinafter described.

In the next paragraph, the probate court awarded title to more than 2,500 shares of stock to Mary. The decree does not make a specific reference to any other property belonging to the estate.

A close reading of the petition for final settlement filed by Mary reveals that the only property she considered to be in Paul's estate at his death was "moneys and other personal property."

Therefore, because Phil, Sr'.s affidavit and Mary's petition for final settlement both advised the Alabama probate court that Paul held no ownership interest in the Johnson County property at the time of his death and because the probate court's decree make no reference to the Johnson County property, we hold that the disputed royalty interests did not pass to Mary at Paul's death despite her designation as Paul's sole legatee and devisee under the will.

### Muniment of Title

Ettinger also contends that the filing of certified copies of the probate documents from Paul's estate in the deed records of Johnson County established title in Mary's heirs under section 96 of the Probate Code. Section 96 does authorize the filing of a certified copy of a duly probated will and the record of its probate from another state or nation in the deed records as a muniment of title. *See* TEX. PROB.CODE ANN. § 96 (Vernon 2003); *Lane v. Miller & Vidor Lumber Co.,* 176 S.W. 100, 103 (Tex.Civ.App.-San Antonio 1915, writ ref'd); 17 M.K. WOODWARD, ERNEST E. SMITH, III, IONE STUMBERG, & W.W. GIBSON, JR., TEXAS PRACTICE: PROBATE AND DECEDENTS' ESTATES § 411 (1971);[12] *see also Jones v. Jones,* 301 S.W.2d 310, 314 (Tex. Civ.App.-Texarkana 1957, writ ref'd n.r.e.) (Louisiana will "was merely filed for record in the office of the County Clerk as a muniment of title and recorded in the deed records").

*Black's Law Dictionary* defines a muniment of title as "[d]ocumentary evidence of title, such as a deed or a judgment regarding the ownership of property." BLACK'S LAW DICTIONARY 1043 (8th ed.2004). As this Court has observed, one of the purposes of probating a will as a muniment of title "is to provide continuity in the chain of title to estate properties by placing the will on the public record." *In re Est. of Kurtz,* 54 S.W.3d 353, 355 (Tex. App.-Waco 2001, no pet.).

Although Paul's will references the Johnson County property, Phil, Sr's affidavit and Mary's petition for final settlement both state that Paul owned no real property in Johnson County at the time of

---

12. Although Professors Woodward and Smith are generally regarded as the authors of this treatise, they acknowledge in the preface that Ione Stumberg and W.W. Gibson, Jr. each authored one chapter. 17 M.K. WOODWARD & ERNEST E. SMITH, III, *Preface to* TEXAS PRACTICE: PROBATE AND DECEDENTS' ESTATES v (1971). We acknowledge Stumberg's authorship because she wrote Chapter 13 on foreign wills. *Id.* ch. 13, at 317.

his death, and the probate decree is silent with respect to the property at issue. Under these circumstances, the probate record does not "provide continuity in the chain of title." Thus, we hold that the probate documents which were filed in the deed records do not constitute a muniment of title.

### Omitted Property

 When any part of the decedent's property is omitted from a will or from the administration of his estate, Texas law has long recognized that an heirship proceeding may be instituted to determine who lawfully inherited the omitted property. See TEX. PROB.CODE ANN. § 48 (Vernon Supp.2007).[13] This is in essence what Chesapeake's suit is, even though no party has cited section 48 or otherwise characterized this as an heirship proceeding.

Mary did not acquire any ownership of the disputed royalty interests by her inclusion in the warranty deeds, but Paul plainly reserved an undivided 1/16 non-participating royalty interest in Tract 1 and a 1/32 non-participating royalty interest in Tract 2.[14] At Paul's death, Mary and Phil, Sr. apparently failed to take these reservations in account, and they were not included in the administration of Paul's estate. Despite this oversight on their parts, these interests were inherited by Phil, Sr. under Paul's will. Furthermore, the parties have stipulated that Phil, Jr. has succeeded to any interest his father held. Thus, the summary judgment record conclusively establishes that Phil, Sr. inherited the disputed royalty interests under Paul's will and Phil, Jr. presently owns those interests.

Accordingly, we overrule McCuen's first issue and Ettinger's first and third issues.

### Take–Nothing Judgment

Chesapeake contends in its first issue that the court erred by rendering a take-nothing judgment against it. The gist of Chesapeake's complaint is that it obtained the precise relief it sought, namely, an adjudication of title to the disputed royalty interests. Thus, Chesapeake contends that it is a "prevailing party" and should not have suffered a take-nothing judgment.

 Black's defines a take-nothing judgment as "[a] judgment for the defendant providing that the plaintiff recover nothing in damages or other relief." BLACK'S LAW DICTIONARY at 861. Although it is true that the primary thrust of Chesapeake's suit was to determine ownership of the disputed royalty interests, the trial

---

**13.** See also Texas Probate Code, 54th Leg., R.S., ch. 55, § 48, 1955 Tex. Gen. Laws 88, 104 (amended 1971) (current version at TEX. PROB.CODE ANN. § 48 (Vernon Supp.2007)); Wells v. Gray, 241 S.W.2d 183, 185 (Tex.Civ. App.-San Antonio 1951, writ ref'd). It should also be noted that probate courts ordinarily have virtually exclusive jurisdiction to determine heirship disputes because a determination of heirship is statutorily included among those matters "appertaining" or "incident" to an estate. See TEX. PROB.CODE ANN. § 5A (Vernon Supp.2007). However, "[i]n a non-probate matter, the district court may assume jurisdiction and determine the heirs of the decedent as long as there is no probate proceeding pending in the county court." Jansen

v. Fitzpatrick, 14 S.W.3d 426, 432 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

**14.** When Paul conveyed his undivided 1/2 interest in Tract 1 to Phil, Sr., Paul reserved to himself an undivided 1/16 non-participating royalty interest in Tract 1. Conversely, at the time of the conveyance of Tract 2 to the Dunsons, Paul and Phil, Sr. each owned an undivided 1/2 interest in Tract 1, and they collectively reserved unto themselves an undivided 1/16 non-participating royalty interest. Thus, Paul and Phil, Sr. each held an undivided 1/32 non-participating royalty interest in Tract 2 after the Dunson conveyance.

court awarded Chesapeake no monetary damages and specifically denied its request for attorney's fees. Under these circumstances, we cannot say that the court abused its discretion by rendering judgment that Chesapeake take nothing. Accordingly, we overrule Chesapeake's first issue.

## Royalties Held in Suspense

 Chesapeake contends in its fifth issue that the court erred by ordering it to pay all royalty monies held in suspense to Phil, Jr. and not just those royalty monies attributable to the interests in dispute in this lawsuit. Chesapeake's complaint raises two sub-issues: (1) whether Phil, Jr. sought such relief in his summary-judgment motion; and (2) if so, whether the court improperly ordered Chesapeake to pay more monies to Phil, Jr. than he is entitled to.

In his summary-judgment motion, Phil, Jr. sought a declaration that he is "the sole owner of the disputed two non-participating royalty interests" and "such other further relief at law or in equity as this court deems proper." The trial court declared Phil, Jr. to be the owner of the disputed interests.

The parties filed a Rule 11 agreement in connection with Chesapeake's interpleader action. In this agreement, the parties stated that Chesapeake had "unconditionally tendered the appropriate funds in the Registry of the Court" and that it would not be necessary for Chesapeake "to actually deposit any funds into the Registry." *See Heggy v. Am. Trading Employee Ret. Account Plan,* 123 S.W.3d 770, 776 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). The parties further agreed that the funds tendered were those "representing production attributable to the interests which are the subject matter of this suit."

Funds held in suspense in this manner are for all intents and purposes the same as funds deposited in the registry of a court. Such funds can be disbursed only by order of the court. *See Eikenburg v. Webb,* 880 S.W.2d 781, 782 (Tex.App.-Houston [1st Dist.] 1993, no writ); *see also* TEX. LOC. GOV'T CODE ANN. § 117.121(a) (Vernon 1999). Therefore, to conclude this litigation by final judgment, it was incumbent upon the court to decree to whom the suspended funds should be disbursed.

There is nothing in the record to suggest that Chesapeake held in suspense any funds other than those attributable to the royalty interests in dispute. In fact, the Rule 11 agreement seems to expressly confirm that these were the only funds held in suspense. Pursuant to Phil, Jr.'s summary-judgment motion, the court determined that he is the sole owner of the disputed interests, and because that motion included a request for general relief, we cannot say that the court abused its discretion by ordering Chesapeake to deliver all suspended funds directly to Phil, Jr. Accordingly, we overrule Chesapeake's fifth issue.

## Ad Litem Attorney's Fees

Chesapeake's second, third and fourth issues challenge the court's decision to require Chesapeake to pay the attorney's fees of the attorney ad litem appointed to represent McCuen. In particular, Chesapeake contends: (a) the court abused its discretion by requiring Chesapeake to pay McCuen's attorney's fees; (b) there is no evidence to support the amount of trial attorney's fees awarded in the judgment; and (c) the court abused its discretion by awarding appellate attorney's fees because proper notice was not given of the hearing for such fees.

Before addressing Chesapeake's issues, we first note that the trial court was re-

quired by Rule of Civil Procedure 244 to pay McCuen's counsel "a reasonable fee for his services" and to tax those fees "as part of the costs." Tex.R. Civ. P. 244;[15] *Cahill v. Lyda*, 826 S.W.2d 932, 933 (Tex. 1992) (per curiam).

In its second issue, Chesapeake contends that the court abused its discretion by requiring Chesapeake to pay McCuen's attorney's fees because: (1) the court failed to state good cause for awarding attorney's fees to a non-prevailing party as required by Rules of Civil Procedure 131 and 141; and (2) McCuen did not cite the Uniform Declaratory Judgments Act (Chapter 37 of the Civil Practice and Remedies Code) in his summary-judgment motion as a basis for an attorney's fee award.

■ Read together, Rules 131 and 141 in essence require a court to state on the record why it has chosen to allow a non-prevailing party to recover costs (including attorney's fees).[16] Tex.R. Civ. P. 131, 141; *see Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376–77 (Tex.2001); *Marion v. Davis*, 106 S.W.3d 860, 868–69 (Tex. App.-Dallas 2003, pet. denied). The courts

of appeals are divided on the question of whether this "good cause requirement" applies in declaratory judgment actions. *Compare Marion*, 106 S.W.3d at 868–69 (under Rules 131 and 141, award of attorney's fees to non-prevailing party in declaratory judgment action must be supported by statement of good cause on the record), *with W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 270 (Tex.App.-Austin 2002, no pet.) (good cause requirement of Rules 131 and 141 does not apply in declaratory judgment action). Nevertheless, because Chesapeake did not raise this complaint in the trial court, it has not preserved this issue for appellate review.[17]

■ Chesapeake also complains that the attorney's fees award cannot be based on the Uniform Declaratory Judgments Act because McCuen did not cite this statute as a basis for relief in his summary-judgment motion. However, McCuen did not request an award of attorney's fees in his summary-judgment motion. Rather, he filed a pretrial motion for attorney's fees.[18] At the conclusion of the summary-

15. Rule 244 provides:

Where service has been made by publication, and no answer has been filed nor appearance entered within the prescribed time, the court shall appoint an attorney to defend the suit in behalf of the defendant, and judgment shall be rendered as in other cases; but, in every such case a statement of the evidence, approved and signed by the judge, shall be filed with the papers of the cause as a part of the record thereof. The court shall allow such attorney a reasonable fee for his services, to be taxed as part of the costs. Tex.R. Civ. P. 244.

16. Rule 131 provides, "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." Tex.R. Civ. P. 131. Rule 141 provides, "The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." *Id.* 141.

17. Chesapeake's motion for new trial complains in pertinent part that "[t]he trial court improperly assessed Plaintiff Chesapeake Exploration Limited Partnership will all attorney ad litem costs." This is, at best, a general objection to the attorney's fee award. In any event, it is not sufficiently specific to preserve this issue for appellate review. *See* Tex.R.App. P. 33.1(a)(1); *Gerdes v. Kennamer*, 155 S.W.3d 523, 532 (Tex.App.-Corpus Christi 2004, pet. denied) ("the allegations in a motion for new trial must be sufficiently specific to enable the trial court to understand what the movant alleges was error.").

18. In similar fashion, Chesapeake filed a motion for attorney's fees 10 days after the summary-judgment hearing. Chesapeake supported this motion with an affidavit of counsel filed on the same date the court signed the initial judgment, which the court designated as its "Final Summary Judgment." Conversely, Ettinger sought attorney's fees in her

judgment hearing, McCuen offered in evidence counsel's affidavit providing an itemized listing of his trial attorney's fees. Chesapeake's counsel stated on the record, "whatever the Court determines to be the appropriate amount of attorney's fees I won't object to that." Chesapeake's counsel and Ettinger's counsel both affirmatively stated that they had no objection to the admission in evidence of the affidavit, and the court admitted it without objection.

From the record, it appears that the merits of the lawsuit were resolved by summary judgment, while the attorney's fees issues were resolved in a bench trial. *See, e.g., Doncaster v. Hernaiz,* 161 S.W.3d 594, 600–01 (Tex.App.-San Antonio 2005, no pet.); *Cadle Co. v. Harvey,* 46 S.W.3d 282, 284 (Tex.App.-Fort Worth 2001, pet. denied). During the course of this brief trial, Ettinger's counsel reminded the court that this suit was brought under the Declaratory Judgments Act which authorizes a court to (in counsel's words) "apportion attorney's fees as the Court sees fit." And in a post-judgment hearing, Chesapeake's counsel referred to the Declaratory Judgments Act as the applicable law in determining whether to award appellate attorney's fees to McCuen.

Because the court awarded the attorney's fees in a bench trial and not as part of the summary-judgment proceedings, it is irrelevant that McCuen did not include a request for attorney's fees in his summary-judgment motion. Chesapeake brought this suit under the Declaratory Judgments Act, and thus the trial court was authorized to award such reasonable and necessary attorney's fees as the court deemed "equitable and just." Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997);

see *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 311–12 (Tex.2006).

For these reasons, we overrule Chesapeake's second issue.

■ Chesapeake contends in its third issue that there is no evidence to support the amount of trial attorney's fees awarded in the judgment. However, McCuen offered in evidence counsel's affidavit providing an itemized listing of his trial attorney's fees. The affidavit recites that the attorney ad litem had incurred $14,748.75 in trial attorney's fees on McCuen's behalf. The judgment requires Chesapeake to pay $14,748.75 in trial attorney's fees.

McCuen offered documentary evidence to support his request for trial attorney's fees, and Chesapeake stated on the record that it had "no objection" to this evidence and that it would not object to "whatever the Court determine[d] to be the appropriate amount of attorney's fees." This evidence is such as would "enable [a] reasonable and fair-minded [trier of fact] to reach the verdict under review." *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005); *see also Matis v. Golden,* 228 S.W.3d 301, 305 (Tex.App.-Waco 2007, no pet.) (applying *Keller* no-evidence standard to findings made in bench trial); *Keith v. Keith,* 221 S.W.3d 156, 172 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (rejecting no-evidence challenge to attorney's fee award where opposing party stated on record "that she had no issue with [counsel's] credentials, rate, or amount of time spent on the case"). Accordingly, we overrule Chesapeake's third issue.

■ Chesapeake contends in its fourth issue that the court erred by granting the

summary-judgment motion, and Phil, Jr. "reserve[d] the right" to pursue appellate attorney's fees in his motion.

attorney ad litem's appellate attorney's fees because proper notice of the hearing on those fees was not given. Before we address the notice issue, however, we must determine whether the trial court had jurisdiction to award appellate attorney's fees because the motion seeking such fees was filed more than thirty days after the initial judgment was signed. *See In re Dickason*, 987 S.W.2d 570, 571 (Tex.1998) (per curiam) (order granting new trial after expiration of plenary power is void for want of jurisdiction); *Custom Corporates, Inc. v. Sec. Storage, Inc.*, 207 S.W.3d 835, 838 (Tex.App.-Houston [14th Dist.] 2006, no pet.) ("Orders issued outside of a trial court's plenary power are typically void").

The trial court signed its "Final Summary Judgment" on September 8, 2006. McCuen filed a motion for new trial on October 5, complaining in particular of the court's rejection of his parol gift theory. On Tuesday, October 10,[19] McCuen filed a Motion for Leave to File Supplemental Evidence to Summary Judgment and Motion to Modify. In this motion, McCuen sought leave of court to present additional evidence regarding his appellate attorney's fees and a modification of the judgment to award those fees. Insofar as this motion constituted a motion to modify the judgment, it was untimely under Rule of Civil Procedure 329b because it was filed thirty-two days after the date the judgment was signed. *See* Tex.R. Civ. P. 329b(a), (g). Insofar as this motion constituted a motion to present additional evidence under Rule of Civil Procedure 270, that rule provides in pertinent part a trial court may grant a

motion to reopen "at any time." *Id.* 270. And there are cases affirming a trial court's decision to reopen the evidence even after rendition of judgment. *See, e.g.*, *McCarthy v. George*, 623 S.W.2d 772, 776 (Tex.App.-Fort Worth 1981, writ ref'd n.r.e.) (evidence reopened 33 days after trial); *Harrison v. Bailey*, 260 S.W.2d 702, 704–05 (Tex.Civ.App.-Eastland 1953, no writ) (evidence reopened at unspecified time after rendition of judgment).

McCuen's timely-filed motion for new trial extended the trial court's plenary power. *See* Tex.R. Civ. P. 329b(e); *In re J.L.*, 163 S.W.3d 79, 82 (Tex.2005). As the Supreme Court has explained, a trial court may in its discretion consider the grounds raised in an untimely motion to modify if the court's plenary power has already been extended by a timely-filed post-judgment motion. *See Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex.2003).

> If the trial court ignores the tardy motion, it is ineffectual for any purpose. The court, however, may look to the motion for guidance in the exercise of its inherent power and acting before its plenary power has expired, may grant a [modification]; but if the court denies [the requested modification], the belated motion is a nullity and supplies no basis for consideration upon appeal of grounds which were required to be set forth in a timely motion.

*Id.* (quoting *Kalteyer v. Sneed*, 837 S.W.2d 848, 851 (Tex.App.-Austin 1992, no writ)).[20]

---

**19.** The certificate of service in this pleading bears the same date so there is nothing to suggest that the "mailbox rule" would apply. *See* Tex.R. Civ. P. 5.

**20.** The original quotation is from McDonald's *Texas Civil Practice. See Kalteyer v. Sneed*, 837 S.W.2d 848, 851 (Tex.App.-Austin 1992, no writ) (quoting *Homart Dev. Co. v. Blanton*,

755 S.W.2d 158, 160 (Tex.App.-Houston [1st Dist.] 1988, orig. proceeding) (quoting 4 Roy W. McDonald, Texas Civil Practice § 18.06.02, at 287 (Frank W. Elliott ed., rev. ed.1984))); *see also* 5 Roy W. McDonald & Elaine A. Carlson, Texas Civil Practice § 28.10, at 291 (2d ed.1999).

■ Here, the trial court granted McCuen's motion for leave to file additional evidence, which we have characterized as a motion to reopen under Rule 270.

In determining whether to permit additional evidence under Rule 270, a court should consider: (1) the movant's diligence in obtaining the additional evidence; (2) the decisiveness of this evidence; (3) whether the reception of the evidence could cause any undue delay; and (4) whether the granting of the motion could cause any injustice. *Naguib v. Naguib*, 137 S.W.3d 367, 373 (Tex. App.-Dallas 2004, pet. denied); *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex.App.-Corpus Christi 2001, no pet.). "The trial court should exercise its discretion liberally 'in the interest of permitting both sides to fully develop the case in the interest of justice.'" *Lopez*, 55 S.W.3d at 201 (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 367 (Tex.App.-Dallas 1984, no writ)).

*Saunders v. Lee*, 180 S.W.3d 742, 745 (Tex. App.-Waco 2005, no pet.).

It can be argued that McCuen failed to exercise due diligence in presenting evidence regarding appellate attorney's fees. However, the remaining three factors support the court's decision to permit additional evidence. Therefore, we cannot say that the court abused its discretion by permitting McCuen to present additional evidence on this issue, and because McCuen's motion for new trial was timely filed, the court was still acting within its plenary power when it permitted McCuen to present additional evidence.[21]

Chesapeake argues that McCuen failed to give twenty-one days' notice of the hearing on his request for appellate attorney's fees as required by Rule of Civil Procedure 166a for summary-judgment hearings. *See* Tex.R. Civ. P. 166a(c). Chesapeake also contends that McCuen's notice does not comply with Rule 21a because it does not reflect that the other parties were notified of the hearing. *Id.* 21a.

■ We have already explained that the court awarded McCuen's attorney's fees during the course of a bench trial and not as part of the summary-judgment proceedings. Therefore, the 21–day notice requirement of Rule 166a(c) does not apply. More importantly, a party must object to a lack of notice in the trial court to preserve that issue for appellate review. *See* Tex.R.App. P. 33.1(a)(1); *Stallworth v. Stallworth*, 201 S.W.3d 338, 346 (Tex.App.-Dallas 2006, no pet.); *Emmett Props., Inc. v. Halliburton Energy Servs., Inc.*, 167 S.W.3d 365, 372–73 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Chesapeake did not object to any failure on McCuen's part to give proper notice. Accordingly, we overrule Chesapeake's fourth issue.

### Ettinger's Attorney's Fees

■ Ettinger contends in her fourth issue that the court abused its discretion by denying her request for attorney's fees because: (1) as demonstrated by the issues presented, she should have been one of the prevailing parties; (2) it is undisputed that she incurred attorney's fees; (3) the court awarded McCuen's attorney's fees; and (4) Phil, Jr. has caused Ettinger to incur at-

---

21. The court signed both the order granting McCuen leave to file additional evidence and the "Amended Final Summary Judgment" on November 14, 2006, well within 75 days after the September 8 judgment was signed. *See Lane Bank Equip. Co. v. Smith So. Equip.,* *Inc.,* 10 S.W.3d 308, 310 (Tex.2000) (timely-filed motion for new trial extends court's plenary power up to 75 days); *Malone v. Hampton,* 182 S.W.3d 465, 468 (Tex.App.-Dallas 2006, no pet.) (same).

torney's fees by his pursuit of the disputed royalty interests, "even though he acknowledged in his affidavit that Mary Huey owned the royalty interests."

Regarding the first contention, we have already determined that Ettinger's issues are without merit, and thus she is not a prevailing party. Regarding the fourth contention, Ettinger mischaracterizes the statements contained in Phil, Jr.'s affidavit. Phil, Jr. stated in one paragraph of the affidavit that "the two brothers and their wives together sold the 210–acre 'West Farm' to [the Dunsons]." In the next paragraph, Phil, Jr. states, "In the conveyance to the Dunsons, again Mary co-signed with her husband as grantors, even though this 'West Farm' was Paul's separate property.... I don't know why Mary was asked to sign." Nowhere in the affidavit does Phil, Jr. state that Mary owned the disputed interests.

Under the Declaratory Judgments Act, a court may award "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009; *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161 (Tex.2004). We assume without deciding that the attorney's fees sought by Ettinger are "reasonable and necessary." Thus, the sole issue for decision is whether the court abused its discretion by determining that it would not be "equitable and just" to award Ettinger her attorney's fees. *See Ridge Oil*, 148 S.W.3d at 161 ("the equitable and just requirements are questions of law for the trial court to decide") (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998)).

Here, the court had before it four parties (and/or groups of parties) represented by counsel. Three of those parties retained their own counsel to represent them in this proceeding, and there is nothing in the record to indicate that any of these parties is indigent. The court, as required by Rule 244, ordered that McCuen's counsel be paid his attorney's fees and taxed those fees as part of the costs. *See* TEX.R. CIV. P. 244; *Cahill*, 826 S.W.2d at 933. The court may have determined that every other party to the litigation should pay their own attorney's fees, but the court had no discretion with regard to McCuen's attorney's fees. From the record, we cannot say that the court abused its discretion by denying Ettinger's request for attorney's fees. Accordingly, we overrule Ettinger's fourth issue.

## Conclusion

The trial court properly determined that Phil, Jr. holds title to the disputed royalty interests because his father inherited those interests from Paul under the terms of Paul's will. The trial court did not abuse its discretion by requiring Chesapeake to pay the ad litem's attorney's fees, nor did the court abuse its discretion by denying Ettinger's request for attorney's fees. Therefore, we affirm the judgment.